1. The allegations and prayers in the petition are predicated upon a verbal contract creating the relationship of principal and agent, and not upon a written contract making defendant an independent contractor.
2. Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where though acquired originally without fraud, it is against equity that it should be retained by him who holds it; and the allegations in plaintiff's petition were sufficient to create a constructive trust.
3. An action brought under a constructive trust for an accounting in equity must be brought within ten years after the right of action accrues. Where a person is in possession of the property of another, using the same for the owner's benefit, and recognizes the latter's ownership, the statute of limitations will not begin to run until the person in possession has given notice to the owner that the person in possession claims adversely to him, or until other circumstances are shown which would be the equivalent of notice.
 No. 14522. MAY 7, 1943. REHEARING DENIED JUNE 12, 1943.
Murray County filed an equitable suit against V. C. Pickering, to which Pickering filed a general demurrer, and to the sustaining of this demurrer Murray County excepted.
The petition alleged: "That an equitable accounting by the defendant to petitioner will show he holds the sum of two hundred thirty thousand dollars, . . or other large sums, which belongs to petitioner." That this was a part of a sum of approximately four hundred thousand dollars "unlawfully made available to the defendant by the Commissioner of Roads and Revenues of Murray County." That the commissioner contracted with the State Highway Board for the construction of a portion of the road from Chatsworth in Murray County to Ellijay in Gilmer County. Both counties entered into the contract, but only that portion in Murray County is involved in this suit. The Highway Department arranged with the Prison Commission to procure convicts to do the work. About the time the construction work on the project was begun, the commissioners of both counties made a verbal agreement with defendant to carry out the construction; also agreeing that such funds as were received from the Highway Department were to be deposited in designated banks, and that these funds were to be disbursed by defendant to pay expenses on the project, for which the defendant was to be paid reasonable compensation. It was *Page 209 
alleged that this verbal agreement was never placed upon the minutes of the commissioner, but that "said contract remained in parol and was not reduced to writing until some two years after the agreement was made, when . . a memorandum agreement was made and signed by the commissioners of the two counties and by the defendant." The verbal agreement, as evidenced by the written memorandum, was as follows:
"It is agreed by Mr. J. S. Hudson, Commissioner of Roads and Revenues of Gilmer County, and Mr. J. W. Harris, Commissioner of Roads and Revenues of Murray County, that V. C. Pickering be and he is hereby appointed and empowered to have full charge of construction of the entire road, bridges, and culverts on State Road No. 2, in Gilmer and Murray Counties known as the Henry Grady Scenic Highway. It is agreed and understood that all funds earned on this road is to be deposited to the credit of the Gilmer-Murray Highway No. 1 in the Bank of Ellijay and Gilmer-Murray Highway No. 2 in the Cohutta Banking Co. at Chatsworth, Georgia, and to be disbursed by V. C. Pickering to pay for any and all expenses on this project. It is agreed and understood that V. C. Pickering is held responsible for the accounting of all funds, and in no case will he be permitted to obligate either of the counties for anything over and above the earnings on this project. It is agreed and understood that Gilmer County is to furnish equipment for the construction of this job, not to exceed $25,000, and the equipment purchased shall revert back to Gilmer County on completion of the job. It is also agreed and understood that Murray County is to furnish cash and equipment not to exceed $25,000, and this amount can only be taken out of the gas fund earned on the State mileage of the road from Chatsworth to the Gilmer County line which started in 1928, and shall continue over a period of time sufficient to purchase necessary equipment with the understanding that all purchases shall not exceed $25,000. It is further agreed and understood that Pickering is not to receive any salary on this job; but after the same is completed and all obligations paid in full and settlement is completed with the Highway Department, he is to be paid a reasonable sum for his services provided there is a sufficient fund left to pay same. It is agreed and understood that any compensation received by him must come out of the earnings *Page 210 
of the above project and not out of the treasury of Gilmer or Murray Counties."
About May 26, 1931, "acting under the terms of the verbal agreement, the defendant . . began work on the project. . . Checks sent [by Highway Department to Murray County] were indorsed and were deposited in the bank to the credit of Gilmer-Murray Highway No. 2, as stated in the verbal agreement, and the funds thus deposited were checked out by the defendant and used by him as he saw fit, no accounting being made by him to the Commissioner of Murray County." The bookkeeping on this project was done by defendant. No record was kept by the county commissioner. The project operations continued as stated until August 12, 1933, when the Highway Department took the work over for completion. "Subsequent to the termination of the project operations, as aforesaid, the Highway Board paid Murray County approximately $216,556.72, as money earned by Murray County on the project before the county's operations of the project ceased. Except the approximate sum of $105,450.92, the above-stated sum paid by the Highway Board was deposited in the bank in Gilmer-Murray Highway Account No. 2, and checked out by the defendant."
The petition further alleged, that on or about March 12, 1934, after the operations on this project had ceased, and while there was $105,450.92 in this account at the bank, J. Roy McGinty Jr., as a citizen and taxpayer, brought an equitable petition against the defendant, the bank, and the county commissioner, alleging, "that the whole setup by and between the fiscal authorities of Murray County and the defendant was illegal; that further disbursement of the funds by the defendant should be enjoined; and that an audit and accounting should be had." To this proceeding the defendant filed an answer in which he alleged, in substance: (a) that he was operating under the verbal contract of employment which was later reduced to a written memorandum, under which he was operating as an agent of the county; and (b) that he had never filed any statement of account for services rendered, because it could not be determined at that time whether there would be anything out of which he could be paid. At the time this suit of McGinty was brought the law had been changed and three commissioners were serving. The answer of the commissioners to said suit contained *Page 211 
the following: "On information and belief, there are yet many outstanding bills to be paid by the said Pickering on the Gilmer-Murray Highway; and until he has completed and performed all duties the commissioners have no right to call upon him for an accounting on said project." At an interlocutory hearing on this case, on March 26, 1934, the judge passed an order directing that the fund in the bank of $105,450.92 deposited to the Murray County Highway Fund be placed in the Gilmer-Murray Highway Account No. 2, and be disbursed by Pickering in payment of charges for construction of the highway, and that after paying said bills he render an accounting to the commissioners. The order further provided for a bond of $49,000 to indemnify the bank and the county against loss. McGinty excepted to this decision, and by writ of error it was transmitted to the Supreme Court. McGinty v. Pickering, 180 Ga. 447 (179 S.E. 358). On March 2, 1935, the Supreme Court reversed the judgment, and held "the funds to be county funds; that the funds were not being treated as county funds; that the defendant was an agent without right; that it was the duty of the county commissioners to audit and pass upon the claims arising against the county in connection with the construction project, which duty could not be delegated, which ruling included defendant's reasonable or unliquidated claim for compensation." (Quotation from petition.) The petition alleged that all the funds from the Highway Board were made available to defendant and checked out by him, and that the commissioners did not pass upon the claims arising against the county in connection with said project.
The petition further alleged that on or about March 4, 1935, after the Supreme Court's decision of March 2, 1935, in McGinty
v. Pickering, supra, there was entered on the minutes record of the commissioners (the minutes being dated May 5, 1934) a copy of a purported written contract between the county and Pickering, and a copy of a complete settlement between the county and Pickering. This contract as recorded was executed by the same parties, the Commissioner of Murray County, the Commissioner of Gilmer County, and V. C. Pickering, who had entered into the verbal contract, a written memorandum of which is referred to in this decision. This contract, dated May 4, 1931, was entirely different from the verbal one contained in the written memorandum. Under the terms of this contract, in substance, Pickering was an independent *Page 212 
contractor agreeing to construct the highway, and as consideration therefor was to receive all funds received by the county from the Highway Department. The settlement with the commissioners showed that for this work Pickering had received $391,132.06, and had expended $374,567.39, leaving a balance of $16,564.67, and in effect turned this balance over to Pickering as compensation for construction of the highway. The commissioners' minutes showed that on June 4, 1935, a resolution was passed, ratifying the settlement made with Pickering at their meeting held on May 5, 1934; reciting the original contract between the Highway Department and the counties; the written contract between Murray County and Pickering that was placed on the minutes on March 4, 1935, making Pickering an independent contractor; that before the settlement of May 5, 1934, the commissioners had fully audited and checked the payments of expenses of building the highway; that all such charges were lawful; that the written contract and settlement with Pickering were placed upon the minutes on May 5, 1935; and further ratified and confirmed the entire transaction.
The petition further alleged, that at the time of the beginning of this highway construction in 1931 the law provided for one commissioner, and this law was repealed in 1933 and a provision was made for three commissioners, but that it was changed back to one commissioner in 1939, and the present commissioner took office January 1, 1941; that on January 3, 1941, petitioner's attention was directed to a judgment of the United States Board of Tax Appeals against Pickering, growing out of his income tax due for the year 1934, for which year he paid as income tax $77,416.90, besides the penalty. By amendment the petitioner attached a certified copy of a petition in this tax proceeding, filed and sworn to by Pickering, in which Pickering referred to funds received from the Murray-Gilmer project, and said that they were received as an agent and employee and not as an independent contractor.
Based upon the foregoing allegations, the petitioner further averred, that "the only minute records of said commissioners ever made of said project operations were as stated in this petition;" that the answer of the commissioners in the suit of McGinty v.Pickering "shows collusion on the part of said commissioners, because they were thus willing to abandon the duty of their office in *Page 213 
order for the defendant to obtain the $105,450.92, the subject-matter of that injunctive suit;" and that the commissioners did not audit and pass upon the claims arising against the county in connection with the project.
"29. Subsequent to the decision of the Supreme Court above stated, and on or about March 4, 1935, the purported accounting of May 5, 1934, was for the first time entered of record on the minute records of the commissioners, in accordance with the collusive plan and scheme hereafter alleged. There was then and there entered of record a paper which has since been termed by the defendant a written contract, and under which he claims he operated under the terms of a valid written contract on the project operations. The paper purports to be a written assignment of a thing not then in existence; it purported to be an assignment of the contract which the State Highway Board was contemplating entering into with Murray County, to the defendant. The contract between the Highway Board and Murray County prohibited any assignment of the contract, and none was had. Besides being wholly lacking in mutuality, the so-called contract was never valid for any purpose, for the defendant never made the required statutory bond. Copy of the so-called contract being hereto attached, marked Exhibit `D,' and reference to same is prayed.
"30. That the quoted collusive averment by the said commissioners and all the claimed accounting hereinbefore referred to and the contract entered of record about March 4, 1935, were entered into as a part of a collusive plan and scheme between the Commissioners of Roads and Revenues and the defendant for the purpose of vesting in the defendant all net sums received from Murray County and the money Murray County received from the State Highway Board under its said contract, and to give to said defendant the moneys of Murray County, Georgia, without a proper accounting and under what was known to be a false and void contract in direct contravention of the terms of the original verbal agreement entered into by the defendant with said Commissioner of Murray County; and that by reason of said facts as aforesaid all sums coming into the hands of the defendant were and are a trust fund for the benefit of Murray County and its citizens, and said funds are now held by defendant without legal excuse or justification as against Murray County, and that it is against equity that the same *Page 214 
should be retained by the defendant; and that for these reasons said funds are held by the defendant as trustee for Murray County under the implied or constructive trust created by law." That by the resolution of June 4, 1935, the commissioners attempted to make a resettlement, but no accounting was in fact made by defendant. By deceitful acts and fraudulent conduct the defendant secured the approval of the commissioners of his unlawful handling and retention of the county's money.
"33. Whether the then acting commissioners acted with knowledge of the nature and extent of the defendant's unlawful acts, or whether they were duped by the defendant to act as they did, they had no power to thus bind Murray County to a fraud; and their acts in accepting the statement and accounting as made by the defendant and making a false and fraudulent settlement with him, being in excess of power granted to them, were not official acts."
"35. The defendant fraudulently prevented knowledge that he holds the above-stated sum of money belonging to Murray County until he was forced to disclose his income from such funds to the Bureau of Tax Appeals, Washington, D.C., on January 5, 1939, and petitioner had no knowledge or cause of knowledge of the facts until its attention was directed to a certified copy of the judgment of said tax board, on January 3, 1941. Nor could petitioner have discovered the same by the exercise of reasonable diligence prior to February 3, 1941." That the purported accounting by the defendant to said commissioners was false. That the expense of the project, including reasonable compensation for defendant, did not exceed the sum of $170,000. That the defendant received the approximate sum of $400,000, and that he holds $230,000 of money belonging to Murray County. That he did not pay out the funds as he and said commissioner averred he did in their settlement statements, and he fraudulently concealed the fact that he retained this $230,000; and that having received the said moneys through fraud and collusion, he is bound to equitably account to petitioner therefor. That due demand for the return of the above-stated funds of Murray County has been made and refused.
The plaintiff prayed for an accounting; that money and property be declared held under a trust; for injunction; and for judgment of $230,000, with interest from March 4, 1935.
1. The first question to be determined is whether the petition and prayers are based on the verbal contract which would make the defendant an agent of the county, or on the written contract making the defendant an independent contractor. The defendant contends that the suit is based on the written contract, by reason of a reference thereto in paragraph 29 of the petition, set forth above. References to the written contract made in other parts of the petition were: "The . . accounting . . and the contract . . were entered into as a part of a collusive plan and scheme . . for the purpose of vesting in the defendant . . the moneys of Murray County . . without a proper accounting and under what is known to be a false and void contract in direct contravention of the terms of the original verbal agreement." Also, "the defendant set up the said false contract and accounting." By such references to the written contract, the petition could not be construed as being based thereon; but on the contrary, construing the petition as a whole and most strongly against the pleader, it negatives any such construction or interpretation. Throughout the amended petition covering more than fifty pages, all reference to any liability is based on the verbal contract, and it is clear that the petition is proceeding thereon. The fact that the petition alleged reasons why the "so called" written contract was not valid could not be properly construed as a proceeding based thereon, nor could the reference to this contract be determined as an anticipated defense. But if so construed, it would effectually avoid such defense, as the petition alleges that the verbal contract was reduced to a written memorandum approximately two years after the written contract is dated, thus superseding it; and the petition also alleged sufficient facts to show that the written contract was a mere collusive scheme to relieve the defendant from liability, and was void. The reference to this contract was in aid of the petition as alleging that the defendant was claiming the funds in question adversely to petitioner, and as establishing a date from which the statute of limitations could be computed.
2. "Whenever the circumstances are such that the person taking the legal estate, either from fraud or otherwise, cannot enjoy the beneficial interest without violating some established principle of *Page 216 
equity, the court will declare him a trustee for the person beneficially entitled, if such person shall not have waived his right by subsequent ratification or long acquiescence." Code, § 108-107. "The relation of principal and agent is a fiduciary one, and the latter can not make advantage and profit for himself out of the relationship, or out of knowledge thus obtained, to the injury of his principal; and the agency being established, the agent will be held to be a trustee as to any profits, advantages, rights, or privileges under any contract made and obtained within the scope and by reason of such agency; and where the agent invests such profits in property or places the same to his credit in a bank, he will be held to hold the same as trustee for the principal, and the latter can maintain in a court of equity an action to trace such profits into such investments, and to enjoin the agent or his done from selling, disposing of, or encumbering any such profits or any property in which the same have been invested." Stover v. Atlantic Ice Coal Cor., 154 Ga. 228
(113 S.E. 802), and cit. "Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." O'Neal v. O'Neal, 176 Ga. 418 (168 S.E. 262); 26 R. C. L. 1232, § 78. A constructive trust is "not created by any words either expressly or impliedly evincing a direct intention to create a trust, but by the construction of equity in order to satisfy the demands of justice." 65 C. J. 223, § 14. See Grant
v. Hart, 192 Ga. 153 (14 S.E.2d 860). Under the allegations in the instant petition, that the defendant entered the services of Murray County as an agent, to receive for his services reasonable compensation therefor, that during the relation as such agent he received approximately $400,000 of county funds, of which sum he applied $170,000 for the use and benefit of the county, and upon demand refused to account for the remaining $230,000, but claimed it as his own, such allegations taken in connection with other facts and circumstances stated in the petition created a constructive trust.
3. As to the statute of limitations applicable to this petition: the allegations assert that the verbal contract, under which the funds were turned over to defendant as agent of the county, was entered into on or about May 26, 1931; that the defendant so held *Page 217 
the funds, as evidenced by his answer to the suit of McGinty v.Pickering, filed after March 12, 1934; and that the first assertion or claim of defendant that he was not holding the property as agent of the county, and that he was holding it as his own, was when the purported written contract was placed upon the minutes of the county commissioners on or about March 4, 1935. The Code, § 3-709, declares: "All actions against executors, administrators, guardians, or trustees, except on their bonds, shall be brought within 10 years after the right of action shall have accrued." In O'Neal v. O'Neal, 176 Ga. 418
(168 S.E. 262), this court held "that this law applies to constructive trusts." In Citizens Southern National Bank v.Ellis, 171 Ga. 717, 731 (156 S.E. 603), it was held: "As long as a person who is in possession of the property of another, using the same for the owner's benefit, recognizes the latter's ownership, no lapse of time will bar the owner from asserting his title as against the person in possession. Before any lapse of time will be a bar to the owner, it must appear that the person in possession has given notice, or there must be circumstances shown which would be equivalent to notice to the owner that the person in possession claims adversely to him. In such a case the statute will begin to run from the date of such notice. Until the owner has such notice, he has the right to treat the possession of the other person as his own." See Grant v. Hart, supra;Reynolds v. Dorsey, 188 Ga. 218, 221 (3 S.E.2d 564).
Accordingly the court erred in sustaining a general demurrer to the petition.
Judgment reversed. All the Justices concur.