Allan C. ALDRIDGE, Dennis W. Peterson and Henry A. Sieron, Plaintiffs,

v.

LILY–TULIP, INC. SALARY RETIREMENT PLAN BENEFITS COMMITTEE and Fort Howard Cup Corporation, Defendants.

Civ. A. No. CV187–084.

United States District Court,
S.D. Georgia,
Augusta Division.

June 12, 1990.

David E. Hudson, William F. Hammond, Augusta, Ga., for plaintiffs.

Ted H. Clarkson, Augusta, Ga., Sanford M. Litvack, Jack A. Gordon, Valerie A. Cohen, New York City, for defendants.

1. As will be more amply explained later, this suit involves a series of successor corporations. However, for purposes of ruling on the defendants' motion, it may be assumed that there is no question of whether the defendants are properly named.

## ORDER

BOWEN, District Judge.

The captioned case is a multiple-count class action brought by current and former employees of defendants Lily–Tulip, Inc. ("Lily") and Fort Howard Cup Corporation ("Fort Howard").[1] The plaintiffs seek damages pursuant to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1984); various provisions of Georgia law; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (*1985*). Plaintiffs also seek injunctive relief pursuant to the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1985).

On January 10, 1990, three classes of plaintiffs were certified. The first class consists of persons seeking damages under federal RICO and state law for Lily's alleged improper deprivation of vacation benefits for the year 1982. The second class consists of persons seeking relief pursuant to ERISA, and the third class consists of persons asserting claims under the ADEA. Prior to my certifying the aforementioned classes, the defendants filed a motion to dismiss. A hearing on defendants' motion was conducted May 1, 1990. The motion to dismiss is now before the Court, and I will rule on the issues presented in the order they appear in the motion.[2]

## FACTUAL BACKGROUND

In September, 1981, Lily was formed pursuant to the sale by Owens–Illinois Corp. of its paper cup division. Many Owens–Illinois employees transferred to the newly-formed Lily–Tulip corporation as a result of the sale. Around the time of the sale Lily distributed a memo to the transferred employees which informed them that Lily would continue to provide benefits as previ-

2. The motion to dismiss is only as to the so-called "vacation benefits" claims and the ERISA claims. Thus, the age discrimination claim will not be discussed in this order.

ously provided by Owens–Illinois. The vacation policy which the September, 1981, memo allegedly pledged to continue provided that salaried employees would accrue vacation time in one calendar year, then take the accrued vacation time in the following year.

In June, 1982, Lily first attempted to change the existing vacation policy by reducing the amount of the vacation benefits by 20%. Later, on about November 4, 1982, Lily sent out a memo, the so-called "Tucker memo,"[3] which purports to restore the 20% reduction pursuant to another change in Lily's vacation policy. This November 4, 1982, change is at the heart of plaintiffs' federal RICO and state law claims.

The "Tucker memo" states that under the new vacation policy employees must take their vacation in the year it is *earned*, rather than in the following year. The memo states that the new policy will be "implemented January 1, 1983." The memo also states that there will be "no provision to carry over vacation periods earned in one year into the following year," and that "[e]mployees who have existing, untaken vacation entitlements under former policy have until the end of the year (1982) to avail themselves of untaken vacation earned under the old policy." Needless to say, there was a great deal of employee discussion and interest regarding the "Tucker memo."

Plaintiffs allege that sometime prior to September 30, 1982, Lily had already decided to change the vacation policy, and that on September 30th Lily wiped from its books a liability of over $1.3 million dollars which had been earmarked as payment for vacation benefits, thereby converting the money to its own use. Plaintiffs claim that they were neither allowed to take their vacations nor paid their vacation benefits for the year 1982. Plaintiffs allege that

officers of Lily used the mails and telephone from June, 1982, through February, 1987, to implement and conceal their actions from Lily's employees. Plaintiffs claim that this conduct constitutes a violation of federal and Georgia RICO laws, breach of trust, tortious conversion and fraud, and breach of contract.

I will now move to the facts surrounding plaintiffs' ERISA claims. As stated earlier, when Lily was formed in 1981 it distributed a memo to those employees who transferred from Owens–Illinois. The memo said that Lily intended to continue providing to those employees the same benefits they previously enjoyed. Plaintiffs allege that the employees' retirement benefits were among those which Lily pledged to continue and that the Lily–Tulip, Inc. Salary Retirement Plan ("the Plan") was set up to administer these retirement benefits.

In June, 1986, a wholly-owned subsidiary of Fort Howard Paper Company acquired Lily and then merged with another wholly owned subsidiary of Fort Howard Paper Company to form Fort Howard Cup Corporation ("Fort Howard"). Plaintiffs allege that in October, 1986, the Fort Howard Board of Directors voted to amend and then terminate the Plan effective December 31, 1986, but that no notice of the amendments was given. It appears to be undisputed that the Plan was underfunded at the time of its termination.[4]

When the Plan was terminated its participants were sent forms giving them two options as to their retirement benefits. The participants were allowed either to purchase an annuity in the amount of their normal retirement benefit, or to transfer their benefits into a profit sharing plan. Plaintiffs allege that the election forms contained misrepresentations and that the amounts of the participants' benefits were miscalculated in various ways. Plaintiffs further allege that as a result of defen-

---

**3.** The Tucker memo is erroneously dated November 4, 1983. All parties agree that the actual date of the memo should read November 4, 1982.

**4.** Although it is undisputed that the Plan was underfunded in some respects, defendants vig-

orously dispute the allegation that they were required to fund the so-called contingent early retirement benefit fund. This will be discussed in more detail in the section of my order analyzing plaintiffs' ERISA claims.

dants' misrepresentations many salaried employees involuntarily retired in order to protect their benefits. Lastly, plaintiffs allege that the defendants' actions aforementioned constituted a breach of a fiduciary duty.

## VACATION BENEFITS CLAIMS

I will now analyze plaintiffs' vacation benefits claims. As stated earlier, plaintiffs allege that Lily's actions in changing its vacation policy in 1982 violated both federal and state RICO laws (Counts One and Two, respectively), and constituted breach of trust (Count Three), tortious conversion and fraud (Count Five), and breach of contract (Count Four). Defendants move to dismiss both RICO claims on the grounds that plaintiffs have failed to allege the requisite pattern of racketeering activity and that their allegations of fraud are not pled with particularity as required under Fed.R.Civ.P. 9. Defendants also contend that the federal RICO claim, as well as the breach of trust claim and the tortious conversion and fraud claim, are barred by the statute of limitations.[5] Lastly, defendants claim that as a matter of law there was no breach of contract with regards to the November, 1982, changes in Lily's vacation policy. I will begin with the motion to dismiss the RICO claims.

## I. RICO CLAIMS

### A. *Statute of Limitations*

■ Defendants first argue that plaintiffs' federal RICO claim is barred by the statute of limitations. In *Agency Holding Corp. v. Malley–Duff and Associates, Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court set a four-year statute of limitations on RICO claims.[6] Thus, a plaintiff is not barred from bringing a suit pursuant to RICO where he filed suit within four years of the time he knew or should have known of his injury. *Bowling v. Founders Title Co.,* 773 F.2d 1175 (11th Cir.1985).

The complaint in the captioned case was apparently filed in state court in April, 1987, and removed to this court on May 13, 1987. The complaint alleges that plaintiffs were injured as a result of a change in Lily's vacation benefits policy. Defendants claim the Tucker memo, dated November 4, 1982, clearly described the change. Thus, defendants argue that plaintiffs knew or should have known that they were being deprived of their vacation benefits no later than November 4, 1982.

At first glance defendants' argument holds some appeal. However, when one carefully reads the Tucker memo the initial appeal fades. Any vacation policy which allows employees vacation with pay necessarily has two components; the actual vacation from work and the monetary benefit of being paid while away from work. The Tucker memo states that under the new policy "[v]acation . . . is earned" during the current year. The memo then states "vacation *periods* earned in one year" would

---

**5.** In their reply brief defendants invite me to declare the federal RICO statute unconstitutionally vague. Defendants extended this invitation during oral argument and in a footnote contained in the third brief submitted in support of the motion to dismiss. In support of their invitation defendants cite Justice Scalia's concurring opinion in *H.J. Inc. v. Northwestern Bell Telephone Co.,* —— U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989).

With a salute to counsel's eloquence and resourcefulness, I decline defendants' invitation to declare the RICO statute unconstitutionally vague. Neither party has briefed this issue, and the only authority cited in support of the proposition is the aforementioned concurrence in *H.J. Inc.* While my ardent admiration for Justice Scalia is no secret and the RICO statute is far from a model of clarity, I conclude that the statute as interpreted gives fair warning to persons of ordinary intelligence of the prohibited conduct and the persons covered. *See U.S. v. Angiulo,* 897 F.2d 1169 (1st Cir.1990); *see also Buffo v. Graddick,* 742 F.2d 592, 595 (11th Cir. 1984) and the cases cited therein.

**6.** The pending lawsuit was filed prior to the Supreme Court's ruling in *Agency Holding.* Plaintiffs contend that the ruling in that case is therefore not applicable to the case at bar, citing *Radcliffe v. Founders Title Co.,* 720 F.Supp. 170, 171 (M.D.Ga.1989). The holding in *Radcliffe* is difficult to apply, since the reasoning therefor is "the case law cited in the portion of plaintiffs' brief dealing with this issue." *Id.* at 175. However, my ruling on the statute of limitations issue makes it unnecessary to decide whether the holding in *Agency Holding* should be applied retroactively.

not be carried over into the following year (emphasis added). While defendants argue that the memo clearly states that any vacation *benefits* not used by December 31, 1982, would be lost, another reasonable interpretation of the memo is that only vacation *time* not used by December 31, 1982, would be lost.

The heart of plaintiffs' complaint is that they were wrongfully deprived of the monetary value of their vacation benefits, not the physical time off from work. Moreover, the complaint alleges that the plaintiffs were not permitted to take any vacation that had accrued as of September 30, 1982. Complaint at p. 5, paragraph 6(c). The Tucker memo is silent as to whether plaintiffs would still be paid if they could not physically take time off from work as vacation. Hence, the Tucker memo is ambiguous as to whether it applied to both the employees' vacation time away from work and the monetary benefit to which the employees were entitled while on vacation.

Plaintiffs argue that no employee realized that Lily was not going to pay vacation benefits for 1982 until June, 1983, when, for the first time, a retiring employee requested benefits but Lily refused to pay. Under these circumstances, I cannot conclude as a matter of law that plaintiffs knew or should have known of their injury prior to June, 1983. As the complaint was apparently filed in April, 1987, but in any event prior to May 13, 1987 (the date the case was removed to this court), I cannot conclude that the complaint was not filed within four years of the time plaintiffs knew or should have known of their injury.[7]

### B.  *Pattern of Racketeering Activity*

■  Defendants next argue that both the federal and state RICO claims should be dismissed on the ground that plaintiffs have failed to allege a pattern of racketeering activity. A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity." 18 U.S.C.

§ 1961(5). "Racketeering activity" is any criminal act listed in 18 U.S.C. § 1961(1), and is often referred to as a predicate act. However, two predicate acts, without more, are insufficient to constitute a "pattern" of racketeering activity.

In *H.J., Inc.*, the Supreme Court again attempted to define precisely what "more" is necessary to show a pattern of racketeering activity. Under the dictates of *H.J., Inc.*, in order to show a pattern of racketeering activity a plaintiff must show that the two predicate acts are related and either amount to or constitute a threat of continuing racketeering activity. *H.J., Inc. v. Northwestern Bell Telephone Co.,* ——— U.S. at ———, 109 S.Ct. at 2901.

Predicate acts are "related" if the acts "have the same or similar purposes, results, participants, victims, or methods of results...." *Id.* Plaintiffs allege that Lily and its agents used the mails and telephone from June, 1982, through December, 1982, to alter the company's financial records and to intentionally misrepresent to its employees the status of their vacation benefits. Plaintiffs allege that defendants used the mails and telephone at least through February, 1987, to implement and conceal their fraud. Use of the mails and telephones to defraud constitutes predicate acts under section 1961(1).

There can be little doubt that the alleged predicate acts are "related" under *H.J., Inc.* Plaintiffs allege that the victims of all predicate acts were Lily salaried employees, and that Lily and its agents participated in the predicate acts, and that the purpose and result of the predicate acts was to wrongfully deprive plaintiffs of their vacation benefits and conceal defendants' actions from them.

Determining whether defendants' alleged predicate acts either amount to or constitute a threat of continuing racketeering activity is not so straightforward. *See Atlas Pile Driving Co. v. DiCon Financial Co.,* 886 F.2d 986, 994 (8th Cir.1989) ("The concept [of continuity] is more difficult to

---

7.  This conclusion is bolstered by the fact that at this time Lily was a private company, and therefore plaintiffs had no way of knowing that Lily had removed the vacation benefits liability from its books and apparently transferred the money to another account.

define" than is the concept of relatedness). "Continuity is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* — U.S. at —, 109 S.Ct. at 2902. This element of a RICO claim may be satisfied by showing either "a series of related predicates extending over a substantial period of time," or the threat that past racketeering activity will continue. *Id.*

The complaint alleges that defendants used the mails in June, November and December, 1982, to alter Lily's financial records and to distribute "memoranda to implement the defrauding of the plaintiffs' vacation benefits." The complaint further alleges that defendants "continued to use the mails at least through February, 1987, to misrepresent the status of the vacation benefits" in order to keep the employees from taking legal action regarding their vacation benefits. Complaint at p. 8–9, paragraph 4.

Defendants argue that the alleged scheme only ran from June, 1982, through December 31, 1982, at which time the alleged scheme was completed by Lily erasing the liability for plaintiffs' vacation benefits from its books. Thus, defendants contend that plaintiffs have only alleged a scheme which extended over a "few weeks or months" and which threatened no future criminal conduct, and have therefore not alleged a "pattern of racketeering activity." *Id.* at —, 109 S.Ct. at 2902.

I cannot accept defendants' arguments. First, while the scheme may have been complete for bookkeeping purposes at the time the liability for vacation benefits was wiped off Lily's books, courts should adopt "a commonsensical, fact-specific approach to the pattern requirement." *Menasco, Inc. v. Wasserman,* 886 F.2d 681, 684 (4th Cir.1989). Common sense indicates that the scheme could not be complete until those employees eligible for the benefits attempted to collect but were refused the benefits.

Furthermore, some of the facts which the courts may consider in determining whether a pattern of racketeering activity has been alleged are the length of time the alleged scheme covers, the number of victims and the occurrence of distinct injuries. *See Sutherland v. O'Malley,* 882 F.2d 1196 (7th Cir.1989). In this sense the alleged scheme is ongoing, i.e. open, because the plaintiff class consists of all employees who were eligible for vacation benefits for the year 1982, some of whom may not have yet attempted to collect their vacation benefits for that year. Further, the scheme as alleged extends at least through February, 1987, and had numerous victims who each allegedly suffered a distinct injury.

Additionally, plaintiffs allege that through February, 1987, defendants engaged in predicate acts which were intended to and had the effect of concealing Lily's conduct from its employees. Plaintiffs allege that these predicate acts were designed to misrepresent to the employees that nothing had changed and that they would still receive their vacation benefits, thereby keeping the employees from taking legal action regarding defendants' actions. This activity can also constitute predicate acts. *See Morley v. Cohen,* 888 F.2d 1006 (4th Cir.1989), *citing United States v. Maze,* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *see also Sun Savings and Loan Association v. Dierdorff,* 825 F.2d 187, 196 (9th Cir.1987) (defendant's four mailings constituted part of allegedly fraudulent scheme where "the effect of the mailings was to prevent the development of any suspicion about [defendant's activities] and thus keep [plaintiff] ignorant of [defendant's] activities"). Thus, plaintiffs have also alleged a closed-ended scheme running from June, 1982, through February, 1987.

A scheme which ends after a fixed period of time satisfies the continuity element of the pattern of racketeering activity requirement if the scheme's predicate acts continue over "a substantial period of time." *H.J., Inc.* — U.S. at —, 109 S.Ct. at 2902. There can be little doubt that a scheme from June, 1982, through February, 1987, is a sufficiently "substantial period of time" to satisfy this element. *See Atlas Pile Driving Co.,* 886 F.2d at 994

("conduct [that] lasted over three years" is sufficient). Accordingly, I conclude that the complaint sufficiently alleges a pattern of racketeering activity.

Although I conclude that the alleged conduct constitutes a "pattern of racketeering activity," there is substantial ground for disagreement as to this issue. *Compare Hutchinson v. Wickes Companies, Inc.,* 726 F.Supp. 1315 (N.D.Ga.1989); *Disandro–Smith & Associates v. Edron Copier Service, Inc.,* 722 F.Supp. 912 (D.R.I.1989). Many Circuits, including the Eleventh Circuit, have yet to address the "pattern" requirement in light of *H.J., Inc.* Given this lack of guidance, and the inconsistency among the few reported cases, I conclude that whether plaintiffs have alleged a "pattern of racketeering activity" is a controlling issue of law[8] as to which there is substantial ground for a difference of opinion.

Moreover, an immediate appeal of this issue will materially advance the ultimate termination of the litigation. A substantial amount of the time the parties spend on discovery will no doubt be directed towards the RICO claim. Likewise, a substantial portion of any trial will also be devoted to the RICO claim. Accordingly, whether the plaintiffs have alleged a "pattern of racketeering activity" is a controlling issue of law as to which there is substantial ground for a difference of opinion, and an immediate appeal of this issue will materially advance the ultimate termination of the litigation.

### C. *Failure to Plead Fraud With Particularity*

■ Defendants next assert that plaintiffs failed to allege fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9. The alleged predicate acts are mail and wire fraud. Hence, "the circumstances constituting" the alleged predicate acts must be "stated with particularity" under Rule 9. *See Durham v. Business Management Associates,* 847 F.2d 1505 (11th Cir.1988).

However, the pleading requirement of Rule 9 does not "abrogate the concept of notice pleading." *Id.* at 1511. In *Durham* the Eleventh Circuit declined to establish a hard and fast rule for what a complaint must allege to comply with the requirements of Rule 9(b). Rather, while the Court stated that allegations of "date, time or place satisfy the Rule 9(b) requirement ... alternative means are also available to satisfy the rule." *Id.* at 1512.

The complaint in *Durham* alleged that "[c]orrespondence and other communications concerning [an investment scheme] took place through means or instrumentalities of interstate commerce, including without limitation, the mails.... The unlawful actions comprising the [investment scheme] constituted racketeering activity ... in that such actions constituted ... mail fraud under 18 U.S.C. § 1341." However, an affidavit from one of the plaintiffs stated that he received documents relating to an investment program "by letter dated December 31, 1979, from Terrance M. Gill," and "[f]rom time to time during the next several years, I received correspondence related to this investment through the mail." This was held sufficient to satisfy the particularity requirements of Rule 9.

In the case at bar the complaint alleges that Lily and its agents ("James Cobb, Kevin Tucker, and other corporate officers") used the mails "in June, November and December, 1982 to alter the financial records of the company and to circulate memoranda to implement" the scheme to convert plaintiffs' vacation benefits, and "continued to use the mails at least through February, 1987 to misrepresent the status of the vacation benefits and thereby avoid the filing of legal actions." Complaint at p. 8–9, paragraphs 3, 4.

The complaint also alleges that Lily through its Industrial Relations Department "uniformly advised employees" that the change "would not work an adverse effect on employees since annual vacation time off with pay would be received in 1982

---

**8.** The issue is a controlling issue of law because it is presented by a motion to dismiss under Fed.R.Civ.P. 12(b).

and 1983 in the same amounts as prior to the policy change, that ultimately there was no loss of benefits for the employees, and that the change was primarily for accounting purposes only." *Id.* at p. 6, paragraph 6(f).

Construing the above allegations liberally and in favor of the pleader, I conclude that the allegations of fraud are pleaded with sufficient particularity to pass muster under Rule 9(b). Plaintiffs' allegations of fraud are more particular than the allegations in *Durham.* The complaint alleges that between June and December, 1982, defendants communicated through the mails and telephones to plan and implement the changes in the vacation policy, and to wipe the liability for vacation benefits off its books and convert these funds to their own use. *See also Formax, Inc. v. Hostert,* 841 F.2d 388, 391 (Fed.Cir.1988) (Court held that plaintiff's RICO claim sufficiently pleaded mail/wire fraud where plaintiff alleged "the content of the communications, the particular defendants, and the scheme to defraud").

Moreover, while the allegations of fraud from December, 1982, through February, 1987, are far from a model of particularity,[9] the allegations do state who made the allegedly fraudulent representations (Lily's Industrial Relations Department); the reasons why the representations were fraudulent;[10] and that the representations were made to conceal defendants' actions from plaintiffs. The complaint also alleges the general time frame in which the misrepresentations were allegedly made, that the mails were used to communicate the misrepresentations (see also Exhibit 6 to the Hagen affidavit), and it describes the alleged scheme in considerable detail.

Under these circumstances, I cannot conclude that plaintiffs have failed to plead fraud with sufficient particularity to put defendants on notice of what it is the plaintiffs claim constitutes fraud. *Compare Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989) (plaintiff did not allege mail/wire fraud with sufficient particularity because she did not "identify the contents of any communications" nor "explain how the communications advanced the alleged scheme of the defendants to defraud her"); *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1393 (9th Cir.1988) (plaintiff only alleged "many acts of mail fraud" and "many acts of wire fraud"); *Ray v. Karris,* 780 F.2d 636, 644 (7th Cir. 1985) (allegations that the defendants "at least twice used, or caused to be used, mail delivered by the United States Post Office" and the defendants "at least twice communicated, or caused communications to be made, by wire and interstate commerce" held to be insufficient). Based on the foregoing, the motion to dismiss the RICO claims (contained in Counts One and Two) is DENIED.

Again, however, I recognize that this is a controlling issue of law as to which there is substantial ground for difference of opinion. The rule in *Durham,* that while allegations of date, time or place satisfy the Rule 9(b) particularity requirement, "alternative means are also available to satisfy the rule," is analytically difficult to apply. Moreover, it appears that other Circuits have placed more stringent pleading requirements upon plaintiffs alleging fraud than the *Durham* Court appears to. *See Formax, Inc.* 841 F.2d 388 (applying 7th Cir. law); *Lally v. Crawford County Trust*

---

**9.** While I agree with plaintiffs that discovery would be required to allege certain fraudulent acts with more particularity, much of the information needed for more particularized allegations of fraud (such as when defendants communicated with plaintiffs and the contents of the communications) should be within the knowledge of the plaintiffs.

**10.** Defendants argue that the representations are not even alleged to be false because the complaint only alleges that the vacation plan was covered by ERISA, which at the time of the

alleged misrepresentation was merely a good faith application of existing law. I concur with defendants that at the time of the alleged misrepresentation the question of whether vacation benefits were covered by ERISA was not settled. However, in making this argument defendants apparently ignore the rest of this paragraph of the complaint, which alleges that defendants represented that employees would not lose their vacation benefits, that they would eventually receive these benefits, and that the change was primarily for accounting purposes.

*& Savings Bank,* 863 F.2d 612, 613 (8th Cir.1988) ("litigant must allege the time, place and content of all false representations); *Schreiber Distributing v. Serv-Well Furniture, Co.,* 806 F.2d 1393, 1401 (9th Cir.1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place and specific content of the false representations as well as the identities of the parties"). Accordingly, I conclude that the issue of whether plaintiffs pled fraud as predicate acts with sufficient particularity under Rule 9(b) is a controlling question of law as to which there is substantial ground for difference of opinion, and for the reasons stated in section I(B) of this order an immediate appeal of this issue will materially advance the ultimate termination of the litigation.

## II. BREACH OF TRUST CLAIMS

■ The next claim to be addressed is plaintiffs' breach of trust claim contained in Count Three. A constructive trust is implied wherever one party obtains through fraud, title to property rightfully belonging to another. *Murray County v. Pickering,* 196 Ga. 208, 26 S.E.2d 287 (1943). Plaintiffs claim that defendants obtained through fraud plaintiffs' vacation benefits, and hence that defendants hold in constructive trust for plaintiffs the monetary value of the vacation benefits for 1982. Defendants move to dismiss this count on the grounds that the claim is barred by the applicable statute of limitations and there is no trust property or *res.*

■ Defendants argue that the applicable statute of limitations on this claim is four years from the time the plaintiff discovers or through the exercise of reasonable diligence should have discovered the fraud. In support of their argument defendants cite *Skinner v. Dekalb Federal Savings & Loan Association,* 246 Ga. 561, 272 S.E.2d 260 (1980). However, in making their argument defendants conveniently ignore O.C.G.A. § 9-3-27 (1982), which provides that the statute of limitations for actions against a trustee is ten years. This is applicable to actions for breach of constructive trust. *See Murray County v. Pickering,* 196 Ga. 208, 217, 26 S.E.2d 287 (1943), citing *O'Neal v. O'Neal,* 176 Ga. 418, 168 S.E. 262 (1933). The complaint was filed well within the ten-year period.[11]

■ Defendants also argue that there is no trust *res* because plaintiffs were not entitled to the vacation benefits at the time the vacation policy was changed. Defendants phrase their argument in terms of a trust *res.* However, they actually argue that since vacation was not earned under the existing policy until December 31, plaintiffs had no right to the vacation benefits until that date. Hence, defendants claim, the benefits did not belong to the plaintiffs, and therefore there can be no constructive trust.

Defendants make essentially the same argument in support of their motion to dismiss plaintiffs' breach of contract claim. For reasons I will enumerate in the portion of this order disposing of the motion to dismiss the breach of contract claim, I cannot conclude that plaintiffs had no right to any portion of the vacation benefits for the year 1982 prior to December 31, 1982. Thus, the motion to dismiss the breach of trust claim in Count Three is DENIED.

## III. TORTIOUS CONVERSION AND FRAUD

■ Count Five of the complaint is a claim for tortious conversion and fraud. Once again, defendants argue that the claim is barred by the statute of limitations. Once again, I cannot accept defendants' argument.

The statute of limitations applicable to Count Five is four years from the time the

---

11. Even accepting defendants claim as to the applicable statute of limitations, the motion to dismiss Count III could not be granted on this ground. In a claim for breach of constructive trust, the statute of limitations begins to run from the time the alleged owner of the property knows or should know that "the person in possession claims adversely to him." *Id.* For the reasons stated in my analysis of defendants' statute of limitations argument as to plaintiffs' federal RICO claim, I cannot determine as a matter of law that this date is prior to June, 1983.

cause of action "accrues." O.C.G.A. § 9-3-31. Defendants concede that a cause of action "accrues" on the date the alleged fraud is discovered, or through the exercise of reasonable diligence should have been discovered. Defendants' Brief in Support of the Motion to Dismiss at 23; *see McNeal v. Paine, Webber, Jackson & Curtis*, 598 F.2d 888 (5th Cir.1979). As I stated in the section of this order rejecting defendants' statute of limitations arguments as to plaintiffs' federal RICO claim, and for the reasons stated therein, I cannot conclude that plaintiffs should have discovered the alleged fraud prior to June, 1983. As this suit was filed within four years from that date, Count Five is not barred by the statute of limitations. Accordingly, the motion to dismiss Count Five is DENIED.

Defendants have asserted the statute of limitations as a defense to plaintiffs federal RICO, tortious conversion and fraud, and breach of trust claims, as contained in Counts One, Three and Five of the vacation benefits claims. It is undisputed that the statute of limitations applicable to the federal RICO and tortious conversion and fraud claims is four years. Moreover, it is far from clear that plaintiffs filed their complaint within four years from the date they knew or should have known of the existence of their claims. The "Tucker memo" at least arguably announced defendants' actions in November, 1982. Furthermore, the alleged scheme or conversion arguably occurred in December, 1982, more than four years from the date the complaint was filed. Thus, whether plaintiffs' federal RICO, and tortious conversion and fraud claims are time-barred are controlling questions of law as to which there is substantial ground for a difference of opinion.

Additionally, since this issue permeates most of plaintiffs' vacation claims, and for the reasons stated in section I(B) of this order, I conclude that an immediate appeal of this issue would materially advance the ultimate termination of the litigation. Accordingly, the issues of whether plaintiffs' federal RICO or tortious conversion and fraud claims are time-barred are certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## IV. BREACH OF CONTRACT

■ The last claim relating to plaintiffs' vacation benefits is a claim for breach of contract (Count Four). Plaintiffs claim that by depriving them of their vacation benefits for the year 1982, Lily breached a contract to provide vacation benefits to plaintiffs. However, defendants argue that under the vacation policy as it existed at the time of the change, vacation benefits for 1982 were not earned until December 31, 1982. Thus, defendants claim that plaintiffs had no right to the benefits until that time, and that Lily therefore had the right to take away those benefits.

Plaintiffs allege that they had "earned" vacation benefits for 1982 as of September 30, 1982. Complaint at p. 11, paragraph 2. Plaintiffs also allege that employees who terminated employment during a year would receive a portion of the vacation benefits for the year of termination. Complaint at p. 3, paragraph 4.

Conversely, defendants argue that the vacation policy unambiguously states that vacation is not earned for a given year until December 31 of that year. However, construing the policy against the defendants, I conclude that the policy is ambiguous as to exactly when during a year an employee "earned" vacation benefits under the policy. Plaintiffs allege that employees who terminated employment during the course of a year received at least some of their vacation benefits for that year. Moreover, the policy does not state that employees do not earn any vacation *benefits* prior to December 31; rather, it states that employees "qualify" for *vacation* as of that date. Construing the vacation policy against Lily, I conclude that the policy is ambiguous as to whether employees had a right to any vacation benefits for the year 1982 prior to December 31, 1982. Thus, I cannot determine as a matter of law that the contract allowed Lily to take away plaintiffs' vacation benefits for the year 1982 at any time prior to December 31,

1982. Accordingly, the motion to dismiss Count Four is DENIED.

## ERISA CLAIMS

Plaintiffs also claim that the defendants violated numerous provisions of ERISA when defendants terminated the Lily Tulip, Inc. Salary Retirement Plan ("the Plan") effective December 31, 1986. It is difficult to determine exactly what causes of action plaintiffs assert. Moreover, it appears that several of the counts in the ERISA section of the complaint overlap.[12] It also appears that several claims have become moot as a result of developments occurring subsequent to the filing of the motion to dismiss. Accordingly, I will rule on the motion as it pertains to the various groups of claims, rather than analyzing each count separately, first addressing whether any of plaintiffs' ERISA claims are now moot. However, when it appears that an entire count is devoted to a single claim, I will refer to that specific count.

In their brief in opposition to defendants' motion to communicate with putative class members, plaintiffs state that in amending the proposed payment of benefits pursuant to termination of the Plan, defendants have "agreed" to use Plan section 1.33(b) rather than section 1.33(c) in calculating benefits and to use the mortality tables and interest rates which plaintiffs alleged defendants should have used in calculating benefits. Based on the foregoing, it appears that Count Four of the complaint (asking for an order requiring defendants to calculate plaintiffs' optional lump sum benefits "using PBGC interest rate assumptions") and Count Six (asking for an order requiring defendants to calculate benefits using the

social security offset in Plan section 1.33(b) rather than the offset in Plan section 1.33(c)) are moot. Accordingly, Counts Four[13] and Six are DISMISSED.

Although the changes which defendants have agreed to have rendered certain of plaintiffs' claims moot, the IRS determination has no "effect on other Federal ... statutes." Accordingly, I must now consider the remainder of plaintiffs' ERISA claims.

The first group of claims is that defendants, upon termination of the Plan, failed to pay early retirement subsidy benefits to the Plan's participants. This claim appears to be asserted in Counts Three and Eight in the ERISA section of the complaint. Plaintiffs seek an order requiring defendants to pay these benefits, as well as damages for breach of fiduciary duty for failure to fund and pay these benefits.

Under the terms of the Plan, employees could retire prior to age 65 and receive unreduced benefits if they met certain conditions. Under the Plan, a participant could receive full retirement benefits if he was at least fifty-five years of age and had at least thirty years of service. An employee who was at least fifty-five and who had at least ten years of service could retire at a reduced benefit. The difference between the unreduced and the reduced benefit for early retirees is the subsidy. The benefit is "contingent" because the plaintiffs had not fulfilled all the requirements for becoming entitled to the unreduced early retirement benefit.

When the Plan was terminated the participants were given the option of receiving their benefits in a lump sum or in the form of an annuity. Plaintiffs contend that the

---

**12.** For example, Count Five alleges "that the benefits promised by the defendants in writing to employees and included in the written Plan document to the extent not inconsistent with the Internal Revenue Code provisions for a qualified retirement plan ... form part of the participants-employees' contract of employment and are enforceable regardless of the plan's funding status." The requested relief is that the Court "enforce the contractual rights of all participants under said retirement plan ..." This appears to be a general, all-encompassing "re-allegation" of the other allegations in this section of the complaint. Conversely, Count Nine ap-

pears to be a specific "re-allegation" of the other allegations in this section of the complaint.

**13.** Count Four of the complaint is titled "Use of Plan Assets for Participants Only," yet seems to contain plaintiffs' claim that defendants used the wrong social security offset in calculating participants' benefits upon termination of the Plan. On the other hand, Count Two is titled "Social Security Offset," yet seems to be a claim that defendants violated ERISA's exclusive benefit or "anti-inurement" provision.

defendants did not pay as part of the benefits the contingent retirement benefit subsidy described above. Plaintiffs contend that this benefit had accrued, and that they therefore could not be deprived of the benefit as a result of the Plan's termination. *See* 26 U.S.C. § 411(d)(3). At the time it was terminated the Plan was underfunded.

Section 4044 of ERISA, 29 U.S.C. § 1344, sets out the order in which benefits under a terminated plan must be paid. In *Mead v. Tilley Corp.*, —— U.S. ——, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989), the Supreme Court held that section 1344 did not create any entitlement to benefits. Rather, in determining whether a participant is entitled to a benefit upon termination of a plan, courts must look to the plan itself and other provisions of ERISA. *Id.* 109 S.Ct. at 2163. The Court specifically withheld ruling on whether early retirement benefits are accrued benefits under other provisions of ERISA. *Id.* at 2164.

▉ Plaintiffs argue that their right to the early retirement subsidy is created by section 8.1 of the Plan, which in pertinent part contains the same language as 29 U.S.C. § 1054(g). However, both of these provisions only state that an early retirement benefit is treated as "accrued" for purposes of an *amendment* to the Plan. Throughout their briefs plaintiffs refer to the "termination amendment" to the Plan. However, I conclude that termination of a plan is distinct from an amendment to an ongoing plan. *See Ashenbaugh v. Crucible, Inc.*, 854 F.2d 1516 (3rd Cir.1988), *cert. denied* —— U.S. ——, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989) ("§ 1054(g) does not cover partial terminations and so would not apply here"); *compare* 26 U.S.C. §§ 411(d)(3) (applicable to termination of a plan) and 411(d)(6) (applicable to amendment of a plan); Plan §§ 8.1 (amendment of plan) and 8.2 (termination of plan).

▉ I am persuaded by the reasoning in *Ashenbaugh* and *Blessitt v. Retire-* *ment Plan for Employees of Dixie Engine*, 848 F.2d 1164 (11th Cir.1988) that early retirement benefits are not accrued benefits under ERISA. Since the language of the Plan is identical to the language of section 1054(g), early retirement benefits are also not accrued under the Plan. Hence plaintiffs were not entitled to these benefits upon termination of the Plan. *See also Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, 763 F.2d 574 (3rd Cir.1985); *Sutton v. Weirton Steel Division of National Steel Corp.*, 724 F.2d 406 (4th Cir.1983); *but see Amato v. Western Union International Inc.*, 773 F.2d 1402 (2nd Cir.1985), *cert. dismissed* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *American Stores v. American Stores Co. Retirement Plan*, 716 F.Supp. 1392 (D.Utah 1989); Note, *Changing the Rules of the Game: Pension Plan Terminations and Early Retirement Benefits*, 87 Mich.L.Rev. 1034 (1989).[14] Accordingly, Counts Three and Eight are DISMISSED to the extent they seek to recover the early retirement benefit subsidy.

However, while the Court in *Ashenbaugh* seemed to hold that early retirement benefits were not accrued benefits, in the preceding sentence the Court stated that it did not need to reach this issue to resolve plaintiffs' claim. *Id.* Thus, the "holding" that early retirement benefits are not accrued benefits under ERISA is dicta. Furthermore, the benefits at issue in *Blessitt* were normal, rather than early retirement benefits. Accrued early retirement benefits are distinguishable from normal pension benefits. *Blessitt*, 848 F.2d at 1173, n. 21.

Neither the plaintiffs nor the Court could locate any case which has resolved the question of whether early retirement benefits are accrued benefits under the law applicable to the termination at issue (and thus may not be eliminated pursuant to a plan termination). As stated above, the

---

**14.** Plaintiffs correctly note that the relevant cases involve overfunded, rather than underfunded, plans. However, it would be an anomalous result if participants in an underfunded plan were entitled to early retirement benefits upon termination of the plan, while participants in an overfunded plan were not entitled to such benefits before the surplus reverted to the employer.

existing persuasive authority is in conflict. *See* 87 Mich.L.Rev. at 1035. Moreover, the Supreme Court in *Mead* expressly declined to decide this issue. Thus, there is substantial disagreement on this question.

Additionally, the issue of whether the plaintiffs were entitled to early retirement subsidy benefits upon termination of the Plan is at the heart of plaintiffs' ERISA claims. The complaint contains nine counts which assert claims under ERISA, two of which are now moot. The motion to dismiss cannot be resolved as to Counts One, Two, Three, Five, Eight and Nine without deciding this issue.

Lastly, the issue presented is strictly a legal issue which is raised by a motion to dismiss.[15] Accordingly, I conclude that the issue of whether plaintiffs were entitled to receive early retirement subsidy benefits upon termination of the Plan is a controlling issue of law as to which there is substantial ground for difference of opinion.

Plaintiffs also claim that defendants failed to use the Plan's assets solely for the benefit of the Plan participants in violation of 29 U.S.C. § 1103(c). This claim appears to be contained in Count Two of the complaint. Plaintiffs allege that the defendants intentionally understated the value of some participants' benefits in order to meet the Plan's obligations to other participants. Plaintiffs claim that the assets of the Plan therefore inured to the benefit of the employer and were used other than for the exclusive purpose of providing benefits to the Plan's participants. Plaintiffs also contend that this conduct constitutes a breach of defendants' fiduciary duty to plaintiffs.

■ Defendants argue that their actions cannot be said to have violated the "anti-inurement" provision outlined above unless they converted the Plan's funds to their own use, citing *Bass v. Retirement Plan of Conoco, Inc.*, 676 F.Supp. 735, 744 (W.D.La.1988). However, I decline to read section 1103 this narrowly. A plan fiduciary may violate the anti-inurement provision of ERISA without actually converting

funds from the plan at issue. *See Leigh v. Engle*, 727 F.2d 113 (7th Cir.1984).

■ However, to violate section 1103 the defendants' use of the plan's assets must result in a direct gain to the defendants. Here, plaintiff only alleges that the defendants intentionally understated certain liabilities in an underfunded plan, then shifted assets from these liabilities to cover other liabilities. Hence, the claim is that the defendants, in miscalculating benefits and failing to fully fund the Plan, used the Plan's assets to their benefit.

Yet all assets in the Plan were disbursed to the participants. Moreover, the Plan's assets were not used to produce income for defendants, such as the assets being invested in such a way as to result in financial gain to defendants. *See Leigh*, 727 F.2d 113 (plan's assets were invested in corporations which were takeover targets to increase price of target corporations' stock, where defendants owned stock in the target corporations). Rather, the allegation is that defendants failed to fully fund the Plan, and therefore paid some benefits but not others. *See Holliday v. Xerox Corp.*, 732 F.2d 548, 549 (6th Cir.1984) ("the transfer of funds from one pension account to another within the company's pension, and the subsequent use of those funds as a setoff in calculating the retirement income owed to employees under" a new benefit provided by the plan, does not violate ERISA's anti-inurement provision); *but see Amato*, 773 F.2d at 1414 (section 1103(c) prohibits employers from "eliminat[ing] certain ... benefits solely for the purpose of using existing assets to meet other obligations under the pension plan").

There is no allegation that defendants *used* the Plan's assets in such a way as to benefit themselves. Any benefit to defendants occurred incidentally as a result of the alleged failure to fully fund the Plan. This claim is distinct from a claim that the assets in the Plan were used in some way to benefit defendants. Accordingly, defen-

---

**15.** It appears to be undisputed that the benefits at issue were unfunded at the time the Plan was terminated, and the sole issue is whether the

provisions of ERISA gave plaintiffs the right to these benefits.

dants' conduct did not violate the anti-inurement provisions contained in 29 U.S.C. § 1103(c), and Count Two is DISMISSED.

Again, however, the answer to the question presented is far from clear. There is little authority on this issue (none of which is binding), and as noted above there is authority to support each side's position. Moreover, the issue arises upon defendants' motion to dismiss. Thus, the issue of whether an employer's intentionally understating benefits in order to use plan assets to pay other benefits violates the anti-inurement provision of 29 U.S.C. § 1103(c) is a controlling question of law as to which there exists substantial ground for difference of opinion.

An immediate appeal of the two ERISA issues discussed above will materially advance termination of the litigation.[16] Although resolution of these two issues would not dispose of plaintiffs' ERISA claims, these are the most complicated issues presented by the complaint. There can be little doubt that the majority of time plaintiffs devote to discovery on their ERISA claims, and the majority of a trial of these claims, would be devoted to these two issues. Accordingly, an immediate appeal would materially advance the termination of the litigation.

Three claims remain unresolved in defendants' motion to dismiss plaintiffs' ERISA claims. The first claim, contained in Count Seven of the ERISA section of the complaint, alleges that defendants attempted to prevent participants in the Plan from pursuing their administrative remedies through intimidation and threats. Defendants raise no arguments in support of dismissing this claim. Accordingly, the motion to dismiss Count Seven of the ERISA section of the complaint is DENIED.

The second unresolved claim is that defendants breached their fiduciary duty to plaintiffs in numerous ways, including failing to properly calculate benefits (in several ways), intentionally understating plan liabilities, and misrepresenting to Plan participants that the lump sum benefit and the annuity which were offered upon termination of the plan were equal, and using the Plan's assets for their own benefit. This claim is contained in Count One of the ERISA section of the complaint.

A plan fiduciary is required to discharge his duties with the care, skill and diligence of a prudent man acting in a like capacity. 29 U.S.C. § 1104(a). Defendants present no grounds for dismissing this claim. Moreover, the complaint alleges that defendants, upon termination of the Plan, failed to calculate benefits as provided by the terms of the Plan. Such conduct is expressly prohibited by section 1104(a)(1)(D). Hence, Count One cannot be dismissed in its entirety.

However, Count One also alleges that defendants breached a fiduciary duty by failing to pay early retirement benefits, and by violating ERISA's anti-inurement provisions. As I have determined that defendants had no duty to pay such benefits and did not violate the anti-inurement rule, the motion to dismiss Count One is GRANTED as to these two alleged breaches of fiduciary duty. The motion to dismiss Count One is DENIED in all other respects.

The final unresolved claim is plaintiffs' claim that defendants failed to give proper notice to Plan participants upon termination of the Plan.[17] Count Three of the ERISA section of the complaint alleges that defendants failed to give fifteen days notice of an amendment which terminated

---

16. The sheer size of the entire case strongly shows that an immediate appeal of all issues certified for interlocutory appeal by this order will materially advance the ultimate termination of the litigation. The case involves hundreds of plaintiffs, and the amount of time which discovery, pretrial proceedings and trial would consume would likely be enormous.

17. It is difficult to determine exactly what notices plaintiffs claim were deficient. The index to plaintiffs' complaint lists this claim as Count Five. However, the claim appears to be in Count Three. Moreover, the factual allegations for plaintiffs' ERISA claims list numerous other allegedly defective notices, see Complaint at pp. 15–17, yet plaintiffs never assert a right to relief for these allegedly defective notices.

the Plan and changed certain actuarial assumptions, in violation of 29 U.S.C. § 1054(h).

On a motion to dismiss, I must construe the pleadings in favor of the pleading party. Plaintiffs allege that on October 30, 1986 the Plan was amended to change actuarial assumptions for purposes of benefit calculation effective December 31, 1986. Plaintiffs further allege that they received no notice of this amendment or its subsequent revision on December 23, 1986. Defendants argue that the complaint alleges that plaintiffs received notice of the amendment on October 31, 1986. However, the complaint only alleges that on October 31 the plaintiffs received a benefit election form pursuant to the Plan's termination. The complaint never alleges that this form contained notice of the change in actuarial assumptions. Accordingly, the motion to dismiss the notice claims in Count Three is DENIED.

### CONCLUSION

The motion to dismiss plaintiffs' vacation benefits claims is DENIED in its entirety. The motion to dismiss the plaintiffs' ERISA claims is GRANTED in part and DENIED in part. Counts Four and Six of plaintiffs' ERISA claims are DISMISSED as moot. Counts Two and Eight of the ERISA claims are DISMISSED entirely, and Counts One and Three of the ERISA claims are DISMISSED in part as outlined above.

However, I am of the opinion that the issues of whether plaintiffs have alleged a "pattern of racketeering activity," whether plaintiffs have pled fraud as predicate acts with sufficient particularity, and whether plaintiffs' federal RICO or tortious conversion and fraud claims are barred by the statute of limitations are all controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal of each of these issues will materially advance the ultimate termination of this litigation.

I am also of the opinion that plaintiffs' claim that they were entitled to early retirement benefit subsidy upon termination of the Plan under the law applicable to the termination at issue, and their claim that defendants violated the anti-inurement provisions of section 1103(c) by understating certain Plan liabilities in order to pay other benefits, both present controlling questions of law as to which there is substantial ground for difference of opinion, and an immediate appeal of these claims would materially advance the ultimate termination of the litigation. Accordingly, these issues are hereby certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

ORDER ENTERED.