938 F.2d 125
 13 Employee Benefits Ca 2492
 Maurice HORN; Martin Gordon; Rose Friedman, Plaintiffs-Appellants,
v.
BERDON, INC. DEFINED BENEFIT PENSION PLAN; Ornyte, Inc.;
Proform, Inc.; Rod Burwell; Richard J. Kelber;
John Steinbergs, Defendants-Appellees.
 No. 89-55391.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 13, 1990.
Decided July 1, 1991.
 
 Ronald Dean, Pacific Palisades, Cal., for plaintiffs-appellants.
 Eric A. Schneider, Anderson, McPharlin & Conners, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before BROWNING, NOONAN and FERNANDEZ, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiffs brought suit alleging defendants violated duties owed plaintiffs under both the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1001 et seq., and a contract between the parties. The district court granted summary judgment for defendants. We reverse.[1]I.
 
 
 2
 Plaintiffs Maurice Horn, Martin Gordon, and Rose Friedman were the sole shareholders and directors of Berdon, Inc. They sold their interest to defendant Rod Burwell. Prior to the sale, plaintiffs were also employees of the corporation and beneficiaries and trustees of the Berdon, Inc. Defined Benefit Pension Plan ("Plan"). The remaining employees of Berdon had no ownership interest in the corporation, but were beneficiaries under the Plan.[2]
 
 
 3
 On October 3, 1982 the corporation's Board of Directors [the "Board"] adopted two resolutions in anticipation of the sale of Berdon to defendants. The first declared the Plan would terminate October 31, 1982, and its assets would be distributed to the beneficiaries. The second amended the Plan to provide each beneficiary with all benefits accrued as of October 31, 1982, and to eliminate any additional benefits accruing thereafter.
 
 
 4
 Nearly a year after the sale, the new owners of Berdon discovered the Plan's assets exceeded its liabilities by $107,047.99, and the new Board of Directors ordered the surplus distributed to the corporation. Plaintiffs allege this action violated defendants' fiduciary duties under ERISA and breached the purchase agreement between the parties.
 
 II.
 
 5
 29 U.S.C. Sec. 1344(d)(1)(C) provides that upon termination of a pension plan governed by ERISA, a surplus may be distributed to the employer, if, among other conditions, "the plan provides for such a distribution in these circumstances." The provision of the Plan relied upon by defendants declares that upon termination of the Plan the corporation may distribute to itself any surplus that resulted from "actuarial error." Because both parties concede the surplus at issue resulted, at least initially, from "actuarial error," defendants argue the district court correctly granted summary judgment in their favor.
 
 
 6
 We disagree. Whatever the Plan may have originally provided for, at the time of the Plan's termination it called for distribution of the surplus to the beneficiaries. While no document entitled "Amendment to Pension Plan" was issued allotting the Plan surplus to the employees, the Board's resolution empowering the corporation's officers "to distribute all of the assets," and requiring "the assets of [the Plan] be distributed to each participant ..." (emphasis added), purported to do precisely that. The resolution was signed by plaintiffs Horn and Gordon as the directors of the corporation. They were also authorized to amend the Plan on behalf of the corporation.[3] Because plaintiffs Horn and Gordon had the power both to adopt Board resolutions and to amend the Plan, the only difference between a Plan amendment and a Board resolution is a matter purely of form--the title of the document.
 
 
 7
 ERISA requires only that an employee benefit plan be established and maintained by a "written instrument." 29 U.S.C. Sec. 1102(a)(1). No additional formalities are required. In particular, there is no requirement that documents claimed to collectively form the employee benefit plan be formally labelled as such. We see no reason to require an employer to comply with such a formality not imposed by law. We therefore hold the Plan provided for the distribution of the surplus to the employees.
 
 
 8
 Accordingly, the defendants could not upset these vested interests. As the Fourth Circuit has written: "On the date of termination ... [t]he rights of [the] parties became fixed, and substantive modifications to the plan altering these rights were precluded." Audio Fidelity v. Pension Benefit Guaranty Corp., 624 F.2d 513, 517 (4th Cir.1980); accord Chait v. Bernstein, 835 F.2d 1017, 1020 (3rd Cir.1987). Defendants' efforts to distribute the surplus to themselves were thus ineffective. Because the Plan called for distribution of the benefits to the Plan beneficiaries, and not to the defendants, summary judgment in favor of the defendants was inappropriate.
 
 III.
 
 9
 Summary judgment with respect to the breach of contract claim also must be reversed. Plaintiffs raised two breach of contract claims based on the purchase agreement on which they were entitled to present evidence.
 
 
 10
 First, section 2.04 of the agreement states that after termination of the Plan "the proceeds" of the Plan shall be "distributed to the respective participants as soon as feasible." It is not apparent on the face of the agreement whether "the proceeds" did or did not include the $107,000 surplus at issue in this case. Under California law (which governs plaintiffs' contractual claim), plaintiffs were entitled to present parol evidence with respect to the meaning of the ambiguous term. See, e.g., Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co., Inc. 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968).
 
 
 11
 Second, plaintiffs contend defendants had "received all the consideration they bargained for" prior to distributing the $107,000 surplus to themselves. As clarified at oral argument, plaintiffs' contention is that by the express terms of Article II of the agreement the defendants were to receive the stock of a corporation with retained earnings of $1,029,540 in exchange for $1,000,000 cash. If the corporation's retained earnings exceeded $1,029,540, plaintiffs were to receive an additional cash payment equal to the increase in value of the corporation. If the corporation's retained earnings fell below $1,029,540, defendants were similarly entitled to an appropriate cash payment. From these express terms, plaintiffs draw the inference that the parties intended to exchange precisely $1,029,540 in corporate assets for $1,000,000 in cash. The $107,047.99 would thus belong to the plaintiffs. This inference was not impermissible as a matter of law. Accordingly, summary judgment was improper.
 
 
 12
 REVERSED.
 
 
 
 [1]
 The order granting summary judgment did not dispose of defendant's counterclaim. The parties stipulated to dismissal of the counterclaim without prejudice. We questioned our jurisdiction in light of Cheng v. Commissioner, 878 F.2d 306 (9th Cir.1989). In Cheng, partial summary judgment was granted in favor of defendants with respect to one of plaintiff's causes of action. The parties stipulated plaintiff would dismiss the remaining causes of action, but retain the right to revive them if plaintiff's appeal of the partial summary judgment proved successful. Id. at 308. We held this to be an ineffective attempt by the parties to transform a non-appealable order granting partial summary judgment into an appealable final order. Id. at 310-11. The present case is distinguishable. Here, defendants dismissed their counterclaim with the understanding it would be reinstated if this court set aside the order granting summary judgment on the underlying action. In contrast to Cheng, however, the revivable claim was solely for indemnification, entirely dependent upon plaintiffs' success in the underlying action. It could not have been heard by the district court after the court granted summary judgment for defendants. There were, in sum, no claims left for the district court to hear after granting summary judgment against the plaintiffs
 
 
 [2]
 Though the remaining employees were not named as parties to this action, the parties have stipulated that any judgment in favor of the plaintiffs will be shared with the remaining employees in proportion to their rights to benefits under the Plan
 
 
 [3]
 Indeed, plaintiffs Horn and Gordon did amend the Plan on behalf of the corporation that same day. See supra