Allan C. ALDRIDGE; Dennis W. Peterson and Henry A. Sieron, Plaintiffs–Appellees,

v.

LILY–TULIP, INC. SALARY RETIREMENT PLAN BENEFITS COMMITTEE and Fort Howard Cup Corporation, Defendants–Appellants.

No. 93–9235.

United States Court of Appeals, Eleventh Circuit.

Dec. 27, 1994.

---

Clark E. Walter, New York City, Ted Hamby Clarkson, Knox & Zacks, Jack A. Gordon, Augusta, GA, for appellants.

William F. Hammond, Hull, Towill, Norman & Barrett, David E. Hudson, Augusta, GA, for appellees.

Before COX, Circuit Judge, MORGAN, Senior Circuit Judge, and VOLLMER *, District Judge.

## PER CURIAM:

### INTRODUCTION

Plaintiffs, individuals and a class composed of employees and former employees ("employees") of Lily–Tulip, Inc., filed this civil action against the Lily–Tulip, Inc. Salary Retirement Plan Benefits Committee and the Fort Howard Cup Corporation, challenging the validity of the amendment and termination of Lily's retirement plan.[1] *Aldridge v. Lily Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 953 F.2d 587, 588 (11th Cir.1992). The district court granted summary judgment in favor of the employees, finding that the termination of and amendments to Lily's retirement plan were void. The court held that the termination was void because Lily had not adopted a written procedure for amending the plan, in violation of the Employee Retirement Income Security Act ("ERISA") § 402(b), 29 U.S.C. § 1102(b). The court also held that the termination of and amendments to the plan were void because they retroactively reduced the accrued benefits of the employees, in violation of ERISA §§ 204(g), 302(c)(8), 29 U.S.C. §§ 1054(g), 1082(c)(8), and because Lily did not give proper notice to the employees of the termination and amendments, in violation of ERISA § 204(h), 29 U.S.C. § 1054(h). Lily appeals the district court's judgment. We reverse.

### I. FACTS

In October 1986 Lily's Board of Directors (the "Board") voted to amend and then terminate the Lily–Tulip, Inc. Salary Retirement Plan (the "Plan"). On October 30, 1986 the Board adopted several resolutions by unanimous written consent. One of these

---

\* Honorable Richard W. Vollmer, Jr., U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. In June 1986, the Fort Howard Cup Corporation was formed when a wholly owned subsidiary of the Fort Howard Company acquired Lily–Tulip, Inc. The Lily–Tulip, Inc. Salary Retirement Plan Benefits Committee was the plan administrator. Both the Lily–Tulip, Inc. Salary Retirement Plan Benefits Committee and the Fort Howard Cup Corporation are defendants in this action. For the sake of convenience, we refer to both Lily–Tulip, Inc. and the Lily–Tulip, Inc. Salary Retirement Plan Benefits Committee as "Lily."

resolutions, Resolution II, stated that the Plan would terminate on December 31, 1986.[2] The employees allege that the Plan termination eliminated the employees' contingent subsidized early retirement benefits. At the time Lily undertook to terminate the Plan, the Plan was underfunded.

On the same date that the Board adopted the resolution to terminate the Plan, the Board also adopted a resolution calling for the amendment of the Plan. The amendment, Amendment No. 2, effectively reduced accrued benefits.[3] For Plan participants under age 55, benefits were reduced by changing the calculation of the social security offset in the Plan's benefit formula for active employees.[4] The employees also contend that the amendment reduced optional lump-sum benefits by changing the actuarial interest rate and mortality assumptions used in calculating benefits.[5]

Lily notified the employees of the proposed termination on October 24, 1986, more than sixty days before the proposed termination date of December 31, 1986. On October 31, 1986, sixty-one days prior to the proposed termination date, Lily sent the employees another letter to bring the employees up to date on the status of the Plan termination and to provide the employees with additional information about their benefits. In addition, on October 31, 1986, Lily sent the employees a notice detailing the definitions and assumptions that would be used in determining each employee's benefits under the terminated Plan. The notice incorporated the changes mandated by Amendment No. 2, but did not inform the employees that an amendment to the Plan had been either proposed or adopted. Along with the letter and notice, each employee received a benefit election form which described the benefits the employee was to receive and allowed the employee to choose the annuity or lump sum form of payment.

Lily submitted the termination and amendment documents to the Pension Benefit Guaranty Corporation ("PBGC") for review pursuant to 29 U.S.C. § 1341. Lily also submitted the documents to the Internal Revenue Service ("IRS"), requesting a determination from the IRS that the Plan would continue to retain its tax-qualified status. The PBGC had no problem with the Plan termination and granted Lily an extension for the distribution of Plan assets pending the IRS's issuance of a letter of determination. The IRS expressed several concerns with the termination and amendment of the Plan, including the amendment of the mortality assumptions and the social security offset. On July 28, 1989, in response to IRS concerns, Lily proposed to adopt Amendment No. 3, which would alleviate IRS concerns regarding Amendment No. 2. The IRS issued a favorable determination ruling subject to the adoption of Amendment No. 3. Amendment

---

2. The resolution reads as follows:
  II. Termination of the Retirement Plan
    WHEREAS, The Corporation deems it desirable to terminate the Retirement Plan after the above amendment;
    NOW THEREFORE BE IT RESOLVED, That the Retirement Plan be and hereby is terminated effective December 31, 1986, subject to the issuance of a determination from the IRS that the Retirement Plan remains a qualified plan under Section 401 of the Internal Revenue Code upon its amendment and termination. (R. 11–92, Ex. B.)

3. On December 23, 1986, Lily revised Amendment No. 2 to clarify its wording. The clarification did not substantively change the effect of the amendment.

4. Benefits were reduced by effectively changing the Plan section under which these participants' Primary Social Security Benefit (PSSB) was calculated. Specifically, the amendment caused these participants' PSSB to be calculated under Plan section 1.33(c) instead of 1.33(b). This change from 1.33(b) to 1.33(c) had the effect of increasing the social security offset, thereby reducing the participants' benefits under the Plan.

5. The employees contend that under the Plan, normal retirement benefits were paid as a life annuity. However, the Plan participant had the option of choosing a lump-sum payment. The lump-sum present value of the retirement annuity was determined by using certain actuarial interest rate and mortality assumptions. Amendment No. 2 changed the mortality tables to be used. By so doing, the participants assumed life expectancy was effectively reduced, thereby decreasing the lump-sum benefit.

No. 3 was adopted and made retroactive to December 31, 1986.[6]

## II. PROCEDURAL HISTORY

The employees filed this civil action against the Lily–Tulip, Inc. Salary Benefits Retirement Committee, seeking damages under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, seeking relief for the deprivation of accrued vacation benefits in violation of Georgia law, for constructive discharge in employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and for the reduction in benefits accompanied by procedural and notice deficiencies in violation of ERISA.

In 1990 Lily moved to dismiss the complaint. The court dismissed some of the ERISA claims entirely, dismissed some in part, and certified two ERISA issues for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.*, 741 F.Supp. 906, 921 (S.D.Ga.1990), *aff'd in part and rev'd in part*, 953 F.2d 587 (11th Cir. 1992). However, the court declined to dismiss some ERISA claims.

The district court dismissed the claims regarding the amendment of the actuarial assumptions and the social security offset, holding that these claims were moot because Amendment No. 3, which superseded Amendment No. 2, addressed the problems raised by the employees in these claims. *See Aldridge*, 741 F.Supp. at 917. The court denied the defendants' request to dismiss the employees' claim that Lily failed to give proper notice to the Plan participants upon the amendment and termination of the Plan. *Id.* at 920–21.

Another ERISA claim asserted that, upon termination of the Plan, Lily had failed to pay a contingent early retirement subsidy that the employees contended was an accrued benefit. The employees argued that under ERISA § 204(g), 29 U.S.C. § 1054(g), early retirement benefits were considered accrued, and could not be decreased except under limited circumstances. The district court held that ERISA § 204(g), which treats early retirement subsidies as accrued benefits, only applies to amendments of ongoing plans, not terminations. Because the case involved a plan termination, the district court dismissed the claims seeking to recover early retirement benefits. *Id.* at 918. However, the court noted that the authority on this subject was in conflict and certified for interlocutory appeal the issue of whether the employees were entitled to early retirement subsidy benefits upon termination of the Plan. *Id.* at 919.

On interlocutory appeal, we held that ERISA § 204(g) applies both to plan amendments and terminations.[7] However, we affirmed the dismissal of this claim because the Plan was underfunded. Under the version of 26 U.S.C. § 401(a) in force prior to October 16, 1987, accrued rights were nonforfeitable only to the extent they were funded. We affirmed the dismissal of the employees' claim because the employees' "right to subsidized early retirement benefits [upon Plan termination] was limited to the extent to which they were funded, and in Lily's case, they were not funded at all." *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.*, 953 F.2d 587, 592 (11th Cir.1992) (footnotes omitted).

Following this court's prior decision, the district court again addressed some of the

---

**6.** A more detailed description of the underlying facts appears in the district court's first order, *Aldridge v. Lily Tulip, Inc.*, 741 F.Supp. 906 (S.D.Ga.1990), and this court's opinion on interlocutory appeal, *Aldridge v. Lily–Tulip, Inc.*, 953 F.2d 587 (11th Cir.1992).

**7.** 29 U.S.C. § 1054(g) reads, in relevant part:

(g) **Decrease of accrued benefits through amendment of plan**

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment

described in section 1082(c)(8) or 1441 of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of—

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.

29 U.S.C. § 1054(g) (1988).

ERISA claims. The employees moved for summary judgment, asserting that the Plan was not properly terminated, that it is ongoing, and that Lily has continuing funding obligations to the Plan and its beneficiaries. The court granted the employees' motion for partial summary judgment, holding that the termination and amendment of the Plan were void and that the Plan is ongoing. The court entered a final judgment on these ERISA claims in favor of the employees. (R.10–107 at 37–38.) Lily appeals.

## III. ISSUES ON APPEAL

Lily presents three issues on appeal: (1) whether our previous decision on interlocutory appeal, *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 953 F.2d 587 (11th Cir.1992), resolved the question whether the Plan was terminated effective December 31, 1986; (2) whether a plan sponsor must terminate a plan by formal amendment, or whether it is legally sufficient to terminate by board resolution coupled with timely notice to the PBGC and the plan participants; and (3) whether a plan provision that reserves to the employer the right to amend a plan pursuant to applicable law satisfies ERISA's plan amendment provisions.[8]

## IV. STANDARD OF REVIEW

■ We apply plenary review to the district court's grant of summary judgment. *Dyce v. Salaried Employees' Pension Plan of Allied Corp.,* 15 F.3d 163, 164 (11th Cir. 1994). In reviewing the case, we take the facts in the light most favorable to Lily, the nonmoving party. *Meyers v. Ramada Hotel Operating Co.,* 833 F.2d 1521, 1523 (11th Cir.1987).

## V. DISCUSSION

### A. OUR PRIOR DECISION

■ The first issue presented is whether this court's previous opinion, *Aldridge . v. Lily–Tulip, Inc. Salary Retirement Plan*

*Benefits Comm.,* 953 F.2d 587 (11th Cir. 1992), held that the Plan terminated on December 31, 1986, thereby precluding the district court from subsequently finding that the Plan had not terminated and was ongoing. Lily contends that our affirmance of the dismissal of one of the ERISA claims implicitly held that the Plan had terminated. Because this court had already resolved the question, Lily argues, the district court did not have authority to revisit the issue. *See Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1515 (11th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988). The employees contend that our previous opinion merely addressed the issue that the district court certified for appeal—whether the employees were entitled to early retirement subsidy benefits upon termination of the Plan. In answering the certified question, the employees contend, we assumed that the Plan had been terminated. The employees argue that our prior decision did not preclude the district court's decision that the Plan had not been effectively terminated.

■ When a court of appeals has jurisdiction on interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the scope of appellate review is not limited to the precise question certified by the district court because the district court's order, not the certified question, is brought before the court. *United States v. Stanley,* 483 U.S. 669, 676–77, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550, 562 (1987). Moreover, this court has held that "a decision of the Court of Appeals at an earlier stage of the same case represents the law of the case not only as to matters 'decided explicitly' but also as to those 'decided by necessary implication.'" *DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.,* 990 F.2d 1186, 1196 (11th Cir.) (quoting *Terrel v. Household Goods Carriers' Bureau,* 494 F.2d 16, 19 (5th Cir.), *cert. dismissed,* 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974)), *order amended,* 997 F.2d 1340 (11th Cir.), *and cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). However, the law of the case doctrine does not extend to issues the

---

**8.** Lily raises a fourth issue on appeal—whether it is appropriate for a court to ignore the findings of the administrative agencies charged with over-

seeing plans. Considering our resolution of the other issues, we need not address this issue.

appellate court did not address. *Piambino v. Bailey,* 757 F.2d 1112, 1120 (11th Cir. 1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). Although a "trial court, upon receiving the mandate of an appellate court, ... must enter an order in strict compliance with the mandate[,] ... the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal." *Id.* at 1119.

In the district court's original order, the court dismissed several ERISA claims, refused to dismiss some ERISA claims, and certified two ERISA issues for interlocutory appeal pursuant to 29 U.S.C. § 1292(b). Of particular interest in this appeal, the district court had dismissed as moot Counts IV and VI, the ERISA claims regarding the amendment of the actuarial assumptions and the social security offset. *Aldridge,* 741 F.Supp. at 917. However, the district court had declined to dismiss several ERISA claims, including the claim in Count III that the employees did not receive proper notice of the amendment and termination of the Plan. *Id.* at 920–21.

The district court had held that ERISA § 204(g), which prohibits under some circumstances the decrease or elimination of accrued early retirement benefits, only applies to plan amendments and not terminations, and therefore dismissed the employees' ERISA claim seeking to recover early retirement benefits. *Id.* at 918. However, the court noted that the authority on the subject was in conflict, and certified for interlocutory appeal the issue of whether the employees were entitled to early retirement subsidy benefits upon the termination of the Plan. *Id.* at 919.

On interlocutory appeal, this court limited its review of the district court's order to the question certified for appeal. *See Aldridge,* 953 F.2d at 590–92. We affirmed the dismissal of the employees' ERISA claim for subsidized early retirement benefits because, in answering the certified question, we determined that the employees were not entitled to such benefits upon termination of the Plan. We held that the employees were not entitled to those benefits because under the version of 26 U.S.C. § 401(a) in force prior to October 16, 1987, the employees' "right to subsidized early retirement benefits was limited to the extent to which they were funded, and in Lily's case, they were not funded at all." *Id.* at 592. Thus, we affirmed the district court's dismissal of the ERISA claim for subsidized early retirement benefits. However, we also held that the district court's analysis was flawed because ERISA § 204(g) applies to both plan amendments and terminations. *Id.* at 590–92, 594.

Although 28 U.S.C. § 1292(b) brought the district court's entire order before us on interlocutory appeal, we did not address any other aspect of the district court's order. Specifically, we did not address whether the Plan had actually been terminated; we merely accepted the language of the certified question and assumed the Plan had terminated for the purpose of answering that question. Moreover, we did not address any ERISA claims other than the claim for subsidized early retirement benefits. *See id.* at 590–92. Because the law of the case does not extend to issues we did not address, following our interlocutory decision the district court was free to determine whether the Plan had been effectively terminated and to address any claims that were not the subject of our opinion on interlocutory appeal.

The claims the district court addressed after our affirmance of the dismissal on interlocutory appeal involve procedural and notice deficiencies relative to the amendment and termination of the Plan. On interlocutory appeal, we only affirmed the dismissal of the claim regarding subsidized early retirement benefits. Because we did not address the alleged procedural and notice deficiencies, we hold that the law of the case doctrine did not bar the district court's consideration of these issues.[9]

9. The claims on which the district court has now granted relief were not included in that part of the complaint addressed in our prior opinion. Count III, for example, includes the claims relative to notice deficiencies. The district court's interlocutory order had declined to dismiss these notice deficiency claims.

## B. REQUIREMENTS FOR VALID TERMINATION

Lily contends that the district court erred in holding that Lily could only terminate the Plan through the adoption of a Plan amendment. Lily further contends that it properly terminated the Plan when its board adopted a resolution providing for the termination of the Plan, and Lily gave appropriate notice to the employees and to the PBGC. On the other hand, the employees contend that the termination is void because only a Plan amendment can effect a termination, and Lily had not adopted a written procedure to amend the Plan pursuant to ERISA § 402(b)(3). The employees further contend that the termination is invalid because the termination violated ERISA § 204(g) by reducing or eliminating accrued benefits without providing notice to the Secretary of the Treasury as required by ERISA § 302(c)(8). The employees also argue that the termination is invalid because the "termination amendment" violated ERISA § 204(h) by not providing notice to the employees of a change in the rate of benefit accrual, after the adoption of the amendment, and 15 days before its effective date.

To decide whether the Plan termination in this case is valid, we must first determine the procedural requirements for terminating a plan. ERISA § 4041, 29 U.S.C. § 1341, governs how an employer may terminate a defined benefit pension plan. Section 4041 states: "Except in the case of a termination for which proceedings are otherwise instituted by the [PBGC] as provided in section 1342 of this title, a single-employer plan may be terminated only in a standard termination under subsection (b) of this section or a distress termination under subsection (c) of this section." 29 U.S.C. § 1341(a)(1) (1988). Under this provision, the plan administrator is required to give the participants at least sixty days' notice of intent to terminate. *Id.* § 1341(a)(2). The administrator must also notify the PBGC as soon as practicable after notifying the participants. *Id.* § 1341(b)(2)(A). The notice to the PBGC must include a certification by the plan's

enrolled actuary that, among other things, the plan is projected to be sufficient, as of the proposed termination date, to pay all the benefit commitments when it is time to distribute them. *Id.*

At the same time it notifies the PBGC, the plan administrator must also give notice to participants and beneficiaries. *Id.* § 1341(b)(2)(B). This notice must specify the amount of such person's benefit commitments as well as the data used to determine the benefit, such as length of service, age, wages, assumptions used (including mortality and interest rate assumptions), and any other information required by the PBGC. *Id.* The PBGC reviews the information provided, and if it believes any of the requirements are not met, or the plan is insufficient to handle the benefit commitments, the PBGC issues a notice of noncompliance. *Id.* § 1341(b)(2)(C). If a notice of noncompliance is not issued, the plan administrator must distribute the "assets pursuant to the standard termination of the plan as soon as practicable ...." *Id.* § 1341(b)(2)(D). If the administrator complies with all of these termination requirements, the plan is terminated and its termination date is the prospective date proposed in the notice of intent to terminate. *Id.* § 1348(a)(1).

■ After reviewing the record on appeal, we find that Lily complied with all of the requirements for a standard termination under ERISA § 4041. Lily notified the employees on October 24, 1986 of its intent to terminate the Plan on December 31, 1986. This is more than the sixty days notice required by ERISA. Soon thereafter, Lily sent each employee a notice specifying the employee's benefits and the definitions and assumptions used to compute the benefits. Lily also notified the PBGC of the termination, and the PBGC later approved the termination. Therefore, we find that the record shows that the termination complied with the requirements of ERISA § 4041.[10]

■ Notwithstanding Lily's compliance with ERISA § 4041, the district court held that Lily's plan could not terminate unless

10. Although the requirement that the Plan assets be distributed has not yet been met, that require-

ment has not yet been satisfied primarily because of this litigation.

the Plan was amended to cease benefits accruals before the proposed termination date. We disagree. Section 4041, which sets forth the exclusive means for a standard termination of a plan, does not require that the plan be amended to terminate the plan. Moreover, it has long been a standard practice, recognized by the courts, to terminate a plan by adopting a board resolution. *See Horn v. Berdon, Inc. Defined Benefit Pension Plan,* 938 F.2d 125, 127 (9th Cir.1991); *Payonk v. HMW Indus., Inc.,* 883 F.2d 221, 223–24 (3d Cir.1989); *Smith v. Mirman,* 749 F.2d 181, 184 (4th Cir.1984); *Birmingham v. SoGen–Swiss Int'l Corp. Retirement Plan,* 718 F.2d 515, 520 (2d Cir.1983). Therefore, we hold that an employer may terminate a plan by adopting a board resolution, and is not required to amend the plan to cease benefit accruals prior to terminating the plan.

On October 30, 1986 the Board adopted a number of resolutions, one of which terminated the Plan effective December 31, 1986, subject to the IRS issuing a letter of determination that the Plan remained qualified. Another resolution, adopted at the same time, authorized the amendment of the Plan. The amendment provided that the Plan would terminate on December 31, 1986, and also changed the social security offset and actuarial assumptions used in computing benefits. We hold that the termination of the Plan and the amendment of the Plan were distinct events. The termination of the Plan was not dependent upon the successful amendment of the Plan.

■■■ The employees also argue that the Plan termination is void because it violated ERISA §§ 402(b)(3) and 204(h), which require a written procedure for amending the plan and fifteen days' notice for certain plan amendments. Because we hold that a plan amendment is not required to terminate a plan, these ERISA provisions could only be applicable to the termination in this case if they apply to both plan amendments and terminations. We conclude that the requirements in ERISA §§ 402(b)(3), and 204(h), although applicable to amendments, are not applicable to plan terminations. *See Schoonejongen v. Curtiss–Wright Corp.,* 18 F.3d

1034, 1040–41 (3d Cir.) (indicating that a legitimate plan termination would not be subject to § 402(b)(3)), *cert. granted,* —— U.S. ——, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994); *Campbell v. Federal Deposit Ins. Corp.,* 1994 WL 475067 at *5 (E.D.Pa. Aug. 29, 1994) (holding that although § 402(b) applies to amendments, it does not apply to terminations); *Berard v. Royal Elec., Inc.,* 795 F.Supp. 519, 525 (D.R.I.1992) (holding that § 204(h) only applies to amendments, not terminations).

■■ Applying § 402 to plan terminations does not further the section's primary purpose. The primary purpose of § 402 is to ensure that the interested parties may determine, at any time, their benefits under the plan. Section 402 accomplishes this by requiring employers to adopt a written plan instrument and establish written amendment procedures. *Schoonejongen,* 18 F.3d at 1038; *Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 295 (4th Cir.1993). Section 402(b)(3) also serves the purpose of preventing unanticipated amendments from defeating employees' expectations of benefits. *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 949 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990). These purposes are not achieved by applying § 402 to plan terminations. The notice and procedural requirements specifically tailored for terminations under § 1341 are sufficient to keep employees apprised of their benefits under the plan and to promote certainty with regard to terminations.

Section 204(h) does not by its terms apply to terminations. Section 204(h) creates a fifteen-day notice requirement for amendments that provide for a significant reduction in the rate of future benefit accruals, not for terminations that eliminate future benefit accruals.

■■ The remaining issue regarding the validity of the termination is whether the termination complied with ERISA § 204(g). ERISA § 204(g) states that accrued benefits may not be decreased except by an amendment to the plan under 29 U.S.C. §§ 1082(c)(8) or 1441. Section 204(g) considers the following to be accrued benefits: the

elimination or reduction of an early retirement benefit or subsidy; and the elimination of an optional form of benefit with respect to benefits attributable to service before the amendment. ERISA § 204(g), 29 U.S.C. § 1054(g) (1988). In this case, the termination of the Plan eliminated such benefits only post-termination. Although the amendments may have reduced accrued benefits with respect to pre-amendment service, the termination of the Plan only eliminated future benefit accrual. The termination, a distinct event in this case, did not violate this section.

We hold that the district court erred in holding that Lily had not successfully terminated the Plan.

### C. WRITTEN PROCEDURE REQUIREMENT FOR AMENDING THE PLAN

■ The third issue on appeal concerns the validity of the amendments to the Plan. The issue is whether a plan provision that reserves to the employer/sponsor the right to amend a plan pursuant to applicable law, but does not set forth a specific procedure for amending the plan in writing, satisfies ERISA's plan amendment provisions. Lily contends that a defined benefit plan need not articulate the procedure by which it may be amended in order to satisfy ERISA's plan amendment provisions. The employees contend that every plan must provide a procedure for amending the plan, and for identifying the persons who have authority to amend the plan. Until the plan documents articulate such a procedure, they argue, any attempted amendment of the plan is void.

In the Plan documents in question, "[t]he Company [reserved] the right to amend the Plan from time to time." (R. 9–86, Ex. 1, sec. 8.1.) The Plan documents provided no procedures for amending the Plan. The district court held that because the Plan "failed to set forth a procedure for amending its terms in writing," the Plan violated ERISA § 402(b)(3), and "until such a procedure is set forth in [the Plan] and followed, the terms of [the Plan] remain unchanged and

benefits continue to accrue." (R. 10–107 at 20.) Because Lily's Plan set forth no such procedure, the district court held that any amendment of the Plan was void. (*See id.* at 20–21.) We disagree.

ERISA § 402(b)(3) provides that "[e]very employee benefit plan shall ... provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3) (1988). The Third Circuit has held that "[a] simple reservation of a right to amend is not the same as a 'procedure for amending [the] plan'; nor does it provide a procedure 'identifying the persons who have authority to amend the plan.'" *Schoonejongen,* 18 F.3d at 1038 (quoting ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3) (1988)). We agree with the Third Circuit and hold that the language in Lily's Plan, reserving "the right to amend the Plan from time to time," does not constitute a procedure for amending the Plan, and thus violates ERISA § 402(b)(3).

■ There is a split of authority among the circuits regarding the appropriate remedy for such a violation. The Third Circuit has held that until an amendment procedure is adopted pursuant to § 402(b)(3), amendments to the plan are invalid.[11] On the other hand, the majority of courts addressing this issue have held that a failure to provide amendment procedures does not invalidate a plan amendment unless the plan participants can show detrimental reliance based on the employer's failure to comply with § 402(b). *E.g., Biggers v. Wittek Indus., Inc.,* 4 F.3d 291, 295–96 (4th Cir.1993); *Adams v. Avondale Indus., Inc.,* 905 F.2d 943, 949 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990); *Murphy v. Keystone Steele & Wire Co.,* 850 F.Supp. 1367, 1379–82 (C.D.Ill.1994). The *Adams* court reasoned that § 402(b) "serves the important purpose of insuring 'against the possibility that the employee's expectation of the benefit would be defeated' by an unanticipated amendment of a ... plan, whose benefits employees may come to take for granted. We do not believe,

---

11. *Schoonejongen,* 18 F.3d at 1040. The court, however, carved an exception for amendments made to the plan to bring the plan in compliance with § 402(b)(3). *Id.*

however, that Congress intended that any plan failing to comply with [§ 402(b) ] would, for that reason alone, become unamendable." *Adams,* 905 F.2d at 949 (quoting *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98, 109 (1989)). Therefore, the court held that a showing of detrimental reliance by the employees is required for an amendment to be avoided under § 402(b)(3). *Id.*

We find the reasoning of the Sixth Circuit in *Adams* to be persuasive, and hold that an amendment to a plan is not void solely because the plan failed to set forth amendment procedures pursuant to § 402(b)(3). However, we hold such an amendment to be void if the employees can show detrimental reliance based on the plan's failure to comply with § 402(b)(3). In this case, the employees cannot show detrimental reliance because Lily maintains that it is obligated to provide the employees their original benefits upon termination under Amendment No. 3 to the Plan. Because the employees cannot show detrimental reliance, the amendments to the Plan are not void. Therefore, we hold that the district court erred in concluding that the amendments are void.

## CONCLUSION

We hold that our previous opinion on interlocutory appeal, *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Comm.,* 953 F.2d 587 (11th Cir.1992), did not bar the district court from addressing the claims and issues which are the subject of this appeal. However, we REVERSE the judgment of the district court granting the employees' motion for summary judgment because we find that Lily has made a sufficient showing that the Plan was terminated effective December 31, 1986, and because the failure to set forth plan amendment procedures in compliance with ERISA § 402(b)(3) did not void the amendments of the Plan in this case. We REMAND to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.