**Jeff ROBERTS, Plaintiff–Appellant,**

v.

**UNION PACIFIC RAILROAD COMPANY, Defendant–Appellee.**

No. 99–36058.

D.C. No. CV–98–00130–BLW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2001.

Decided Aug. 6, 2001.

---

Before LAY,* TROTT and BERZON, Circuit Judges.

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit,

MEMORANDUM **

This is an appeal from the district court's order of summary judgment against an employee's claims for wrongful denial of benefits and employment discrimination. We affirm.

## I. Facts

Jeff Roberts was employed by the Union Pacific Railroad Company ("UP") from November 1966 until December 1996. In December 1996, UP learned that over the course of twelve months, Roberts had taken and redeemed $5,200 worth of gift certificates that were to be distributed to other employees as part of a company bonus program. When UP officials confronted him, Roberts admitted to the theft.

On January 7, 1997, Roberts' supervisor asked Roberts to resign, effective December 31, 1996, by signing a separation agreement. In exchange for Roberts' resignation and agreement to repay UP for the stolen property, the agreement stated that UP would not pursue legal action for the theft and that he would be paid his salary and unused vacation time through December 31, 1996. The agreement also notified Roberts that his employee benefits would expire upon the December 31 termination date and advised him of his option to obtain medical coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") for an eighteen-month period. Roberts refused to sign the agreement and also refused COBRA coverage. UP discharged him effective December 31, 1996.

Subsequent to his discharge, Roberts was diagnosed as suffering from diabetes, hypoglycemia, high blood pressure, and poor impulse control. An MRI showed that Roberts also had suffered a series of small strokes. Roberts stated in deposition testimony that he had experienced symptoms of medical problems, such as eye-twitching, memory loss, and depression as early as February 1996, but that his supervisor would not allow him time off to go to the doctor.

Thereafter, Roberts filed a claim for Long Term Disability ("LTD") and medical benefits and vacation pay on grounds that he was disabled before he was terminated. By letter dated January 28, 1998, UP's plan administrator, Henry N. Carnaby, denied Roberts' claim, citing three grounds: (1) Roberts was not disabled when he was terminated on December 31, 1996; (2) Roberts failed to exercise his option to obtain COBRA medical care benefits following termination; and (3) Roberts forfeited vacation pay benefits by virtue of his termination and failure to obtain permission to carry unused 1996 vacation time over into 1997.[1]

Roberts filed this lawsuit in March 1998, alleging various common law breach of contract claims based on UP's denial of benefits and vacation pay. Roberts also alleged that UP discriminated against him in violation of the Americans with Disabilities Act ("ADA"). The district court denied Roberts' motion to amend his complaint to assert a violation of the Employee Retirement Income Security Act ("ERISA"), on grounds that the amendment would be futile because the claim was preempted by ERISA. The court also rejected Roberts' ADA claim on grounds that he failed to exhaust his administrative remedies under the ADA and, in any event, did not make a prima facie case of

sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. UP later paid Roberts for past due vacation in the amount of $3,238.47. This issue is not on appeal.

disability discrimination. Accordingly, the court granted summary judgment in favor of UP.

## II. Summary Judgment

### A.

This court reviews the district court's grant of summary judgment *de novo*. *See Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Summary judgment will be affirmed where there are no genuine issues of material fact and where the district court correctly applied the relevant substantive law. *See id.*

### B.

UP's LTD and medical benefits plan consists of several booklets and documents, which, when taken together, contain all of the information necessary to constitute a qualified ERISA plan. *See Horn v. Berdon, Inc. Defined Benefit Pension Plan*, 938 F.2d 125, 127 (9th Cir.1991) (stating that documents may "collectively form" the ERISA plan and need not be formally labeled as such). The plan vests its administrator and fiduciaries with discretionary authority to interpret its terms and to determine entitlements to benefits. Barbara W. Schaefer, Senior Vice President of Human Resources for UP, is the designated administrator of UP's ERISA plan.

 Carnaby is Schaefer's agent. Although UP's plan documents do not specifically authorize Schaefer to delegate her fiduciary duties, a named fiduciary of an ERISA plan may "designate persons other than [him or herself] to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan." 29 U.S.C. § 1105(c)(1)(B); *see also Concha v. London*, 62 F.3d 1493, 1501–02 (9th Cir.1995) ("[T]here need not be an express delegation of fiduciary duty in the Plan instrument itself for persons performing duties of a fiduciary nature to be considered fiduciaries."). Thus, when he denied Roberts' claim for LTD and medical benefits, Carnaby was exercising his discretion as UP's plan fiduciary.[2]

Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a deferential standard of review is appropriate. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Accordingly, this court must determine whether UP's denial of benefits was "arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Moore v. Provident Life & Accident Ins. Co.*, 786 F.2d 922, 927 (9th Cir.1986).

### C.

UP's LTD plan provides coverage to employees who are unable to work at any job for which they are qualified by training, education or experience, as determined by UP. Coverage under the plan expires the last day of the month in which the employee's employment ends.

 The record shows that Roberts was able to and did work until his termination

---

**2.** When he denied Roberts' claim for benefits, Carnaby was an employment law specialist for UP. An attorney who renders legal and consulting advice to a plan is not considered to be a fiduciary absent a showing of his or her control of the management of the plan or its assets, investment advice for a fee, or discretionary responsibility in administering the plan. *See Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir.1988) (reciting Department of Labor regulations). Carnaby's control and discretionary responsibility in administering the plan is evidenced by his January 28, 1998, letter to Roberts' attorney wherein Carnaby, on behalf of UP, denies Roberts' request for benefits under UP's ERISA plan.

on December 31, 1996. Prior to that time, Roberts had not made any indication to UP that he was having medical difficulties. Roberts first informed UP of his health problems through his attorney by letter dated February 6, 1997. In that letter, Roberts informed UP that he had been diagnosed as a diabetic. In a December 16, 1997, letter to UP, Roberts submitted a letter from Dr. Craig B. Hummel, who was one of Roberts' treating physicians. Dr. Hummel's letter stated that an MRI performed on June 30, 1997, indicated that Roberts had suffered "a small stroke." Dr. Hummel concluded that it was "most likely" that Roberts had suffered a series of small strokes over a period of months or years, which "may have contributed" to Roberts' poor judgment preceding his termination from UP. The letter did not, however, establish that Roberts was disabled on or before his December 31, 1996, termination date. Letters from other treating physicians described Roberts' mental and physical condition in 1997 and beyond, but once again, did not fix a date of onset or show that Roberts was in any way disabled during the time of his employment with UP. At oral argument, Roberts' counsel conceded that nothing in the documentation provided to UP fixed Roberts' date of disability before the date of his termination.

Although it is unfortunate that Roberts' thirty-year career with UP ended as it did, with these facts we cannot say that UP's decision to deny Roberts' benefits was "arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Moore,* 786 F.2d at 927.

■ Nor can Roberts otherwise state a claim for medical benefits under the UP plan. Roberts' eligibility for such benefits expired on the last day of the month in which he was terminated. UP provided Roberts the opportunity to extend his medical coverage beyond his termination through COBRA, but Roberts declined. As of December 31, 1996, Roberts was no longer entitled to medical benefits under UP's plan and he voluntarily forfeited his right to COBRA coverage by not applying for it.

### D.

■ Roberts also appeals the district court's denial of his claim under the ADA. Roberts' ADA claim fails for want of correct procedure. A private plaintiff asserting an employment discrimination action under the ADA must follow the procedures applicable to Title VII actions. *See* 42 U.S.C. § 12117(a). This means that Roberts was required to either file a complaint with the Equal Employment Opportunity Commission ("EEOC") or with the appropriate state or local agency. *See id.* at § 2000e–5(e)(1). A complaint processed through the state agency, as in this case, must be filed within 300 days of the alleged unlawful employment practice. *See id.* The plaintiff may then bring a civil action within ninety days after the agency notifies the plaintiff of his or her right to sue the employer. *See id.* at § 2000e–5(f)(1).

■ Roberts filed a charge of disability discrimination with the Idaho Human Rights Commission ("IHRC") on December 4, 1998, which was almost two years after his alleged unlawful termination. Although the limitations period for filing may be modified for equitable reasons, such reasons generally are limited to the employee's excusable ignorance and actions of the employer which actively misled the plaintiff into missing the filing deadline. *See Naton v. Bank of Calif.,* 649 F.2d 691, 696 (9th Cir.1981). Since there is no evidence in the record either that Roberts was ignorant of the deadline, excusably or otherwise, or that UP in any way impeded

Roberts' compliance with the administrative filing requirement, we decline to modify such procedures for his benefit.

Accordingly, we AFFIRM the order of the district court granting summary judgment to UP.

AFFIRMED.